Alvin Lee WILLIAMS, Complainant–
Appellee,

and

Colorado State Personnel
Board, Appellee,

v.

COLORADO DEPARTMENT OF
CORRECTIONS, Respondent–
Appellant.

No. 94CA1280.

Colorado Court of Appeals,
Div. I.

Jan. 25, 1996.

Rehearing Denied April 25, 1996.

Certiorari Denied Nov. 12, 1996.

E. Hil Margolin, Denver, for Complainant–
Appellee.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Jill M.M. Gallet, Assistant Attorney General, Denver, for Appellee Colorado State Personnel Board.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Stacy L. Worthington, Assistant Attorney General, Denver, for Respondent–Appellant.

Opinion by Judge METZGER.

The Colorado Department of Corrections (the Department) appeals the order of the Colorado State Board of Personnel (the Board) requiring the Department to reinstate complainant, Alvin Lee Williams, to his former position as a corrections officer, to certify him as a state employee, and to compensate him with full back pay and benefits for the period during which he was separated from his position at the Department. We vacate the order.

In March 1991, the Department hired Williams for a one-year probationary period to work as a corrections officer at its Denver facility. On February 28, 1992, two days before Williams would have become a certified state employee, his employment was terminated.

During his one-year probationary period, Williams' performance was evaluated once every three months. Williams' supervisors rated his performance as "good" on his first two reviews. However, in his third review, dated January 15, 1992, Williams received a performance rating of "good" in four categories and a rating of "needs improvement" in four others, specifically: "Occupational/Professional Competence, Problem Analysis and Decision Making, Interpersonal Relations, and Security and Miscellaneous."

The poor review was apparently the result of events that occurred between October 24, 1991, and January 10, 1992, in which corrections personnel documented three violations of Department rules by Williams. The allegations included: threatening another corrections employee, refusing to yield use of a telephone so that important information could be relayed to another part of the facility, sleeping or reading while on the job, and refusing to comply with orders from a superior officer.

On January 15, 1992, Williams' supervisor wrote a "corrective action" letter informing him that his performance had not been satisfactory and ordering him to improve his performance within 45 days. Specifically, the letter required Williams to: obey all orders and instructions given by a senior officer, conduct no personal business affairs during working hours, remain alert on post at all times, and keep the lines of communication open.

After receiving his third review and the corrective action letter, Williams wrote several letters to his supervisors. These letters generally stated that Williams took exception to the allegations that he had performed poorly in the third quarterly review period. Williams also requested documentation and clarification regarding the specific incidents of alleged misconduct. Later, Williams tendered a letter in which he agreed to work with his supervisor to remedy the problem.

On February 24, 1992, the warden of the facility where Williams was employed met with Williams to determine if further corrective or disciplinary action was necessary. Based on the three performance reviews and the three reports alleging violations of Department rules, the warden terminated Williams' employment on February 28, 1992.

Williams then filed a complaint with the Colorado Civil Rights Division (the Division) alleging that his discharge was a result of racial discrimination. The Division investigated the allegations and determined that there was probable cause to believe that the termination was racially discriminatory. Based on these findings, the Division initiated conciliation efforts, pursuant to §§ 24–50–125.3, C.R.S. (1988 Repl.Vol. 10B) and 24–34–306, C.R.S. (1995 Cum.Supp.), in an attempt to resolve the dispute between Williams and the Department.

After the conciliation failed to resolve the matter, Williams appealed to the Board pursuant to § 24–50–125.3. A hearing was convened before an Administrative Law Judge

(ALJ) to determine if Williams' claims had merit. At the conclusion of the hearing, the ALJ determined that there was insufficient evidence to support Williams' allegations of racial discrimination. However, the ALJ found that the termination was arbitrary and capricious and was in violation of a Department regulation. Thus, the ALJ entered a decision ordering that Williams be reinstated, certified as a state employee, and given back pay and benefits for the time during which he was separated from his position.

The Department timely appealed to the Board, and the Board affirmed the ALJ's findings and conclusions.

## I.

■ The Department first contends, in essence, that the Board erred in determining that a Department regulation prohibited Williams' termination from employment. We agree.

■ A probationary employee of the state has no constitutional or statutory right to appeal a dismissal from employment for unsatisfactory performance. However, when the state promulgates a regulation that imposes on a governmental department more stringent procedural standards than are constitutionally required, due process demands that the affected department adhere to those standards in discharging an employee. *Department of Health v. Donahue,* 690 P.2d 243 (Colo.1984).

■ In construing an administrative regulation, we apply the same basic rules of construction as we would in the interpretation of a statute. Thus, we look first to the language of the rule and analyze the words and phrases according to their plain and ordinary meaning. *Regular Route Common Carrier Conference v. Public Utilities Commission,* 761 P.2d 737 (Colo.1988); *Gerrity Oil & Gas v. Magness,* 923 P.2d 261 (Colo.App.1995).

■ Furthermore, the provisions of an administrative regulation should be read in connection with each other, so that the regulation itself may be interpreted as a whole. *Regular Route Common Carrier Conference v. Public Utilities Commission, supra.*

Department of Corrections Internal Regulation 701–3 (Rating of New Employees During Probationary Period, Adopted July 7, 1983, now superseded, on file with Supreme Court Library) provided, in relevant part:

a. Each new employee shall be provided with a ... Performance Plan within thirty (30) days of entry or duty date and shall be given a written performance evaluation using the Progress Review Form at the end of the third, sixth, and ninth month of employment.

b. If the employee is not performing at a 'standard' level at least by the end of the third and/or sixth month, he/she will be advised of this in writing and informed of what must be done to bring performance up to a standard level prior to the next appraisal.

c. The final appraisal shall be given at the end of nine (9) months of employment.

d. If the employee is still below standard at the end of the ninth month, the supervisor shall notify the appointing authority, all intermediate line supervisors and the Personnel Office as well as the employee in order that appropriate action can be taken to separate the employee from the state service and the Department of Corrections. Otherwise, the employee will be certified as of the employee's anniversary date.

Here, the ALJ held that Regulation 701–3 applied and that the Department had failed to comply with it. Specifically, he determined that:

In the first and second progress review Williams' performance was rated as good, not below standard as regulation 701–3 would require for a substandard rating at the end of the third quarter progress review to result in automatic separation from employment. Rather than initiate appropriate action to separate Williams from his employment, [Williams' supervisor] issued a corrective action, giving Williams time to improve his performance.... [T]he incidents alleged in support of the substandard third progress review rating did not justify the action taken. Williams' imme-

diate supervisors rated his performance as good overall.

. . . .

The errors in this case extend beyond the procedural. The purpose of a probationary period is to permit the employer time to evaluate and assess an employee's job performance. Here, the [Department] promulgated 701–3 which imposes more stringent standards than are required by constitution, statute or Board rule . . . .

The ALJ's application of Regulation 701–3 was in error. Analyzing the regulation as a whole, we conclude that it does not grant a vested right to certification to persons in Williams' position. That is, it is not applicable to probationary employees who receive acceptable reviews on their first and second quarterly evaluation but who fail to perform satisfactorily in their third quarter. Nor does this regulation establish more stringent procedural standards than due process requires for a probationary employee to be separated from state employment. *See Department of Health v. Donahue, supra.*

Rather, we read the rule as requiring the Department to consider a probationary employee's improvement in the third quarterly review period over any substandard performance ratings received in previous reviews. Thus, a probationary employee who does not receive a substandard performance review in either the first or second quarter is not affected by the regulation.

Here, because Williams did not receive substandard reviews on either of his first two quarterly reviews, Regulation 701–3(b) and (d) did not apply to him.

## II.

▮ The Department next contends that the Board exceeded its jurisdiction in determining that Williams' termination was arbitrary and capricious. Again, we agree.

Colo. Const. art. XII, § 13(10) provides that:

The state personnel board shall establish probationary periods for all persons initially appointed, but not to exceed twelve months for any class or position. After satisfactory completion of any such period, the person shall be certified to such class or position within the personnel system, but *unsatisfactory performance shall be grounds for dismissal by the appointing authority during such period without right of appeal.* (emphasis added)

Likewise, § 24–50–125(5), C.R.S. (1995 Cum.Supp.) requires that: "A probationary employee shall be entitled to all the same rights to a hearing as a certified employee; except that such probationary employee *shall not have the right to a hearing to review any disciplinary action taken pursuant to subsection (1) of this section while a probationary employee* . . . ." (emphasis added).

Here, Williams' only right was to a hearing to determine if he had been subjected to racial discrimination by Department personnel. *See* § 24–50–125.3. However, because the Department argued that its decision to terminate Williams' employment was based on his unsatisfactory performance, the Board was without jurisdiction to probe the basis for the termination, except to determine the merit of his racial discrimination claim.

*Maurello v. Colorado Department of Corrections,* 804 P.2d 280 (Colo.App.1990), is not to the contrary. In that case, a division of this court held that a probationary employee was entitled to an evidentiary hearing even though the agency that terminated his employment stated that the termination had resulted from "unsatisfactory performance." The agency argued that the employee had failed to perform his duties satisfactorily because he made false or deceptive statements in his employment application. The opinion concluded that, even if they were true, the facts alleged were not related to the employee's performance while on the job and thus could not form the basis of an "unsatisfactory performance" discharge.

Here, in contrast, the facts alleged by the Department, if taken as true, certainly amount to unsatisfactory performance. Indeed, the ALJ acknowledged as much, finding that:

Sleeping [on the job] is considered a very serious threat to the safety of the correc-

tions officers and to the inmates. The next most serious violation is for the corrections officer in the control center to be inattentive to what is going on between the officers and inmates in the cell house. Given the ratio of guards to inmates, it is necessary for all correctional staff and officers to be alert at all times. It is sometimes necessary for the officer in the control center to call back-up, alert security to the problems and close down the pods to ensure that problems are contained.

The ALJ determined that the testimony of Department officials against Williams was not credible and thus could not form the basis of an unsatisfactory performance discharge. However, the facts alleged by the Department, if taken as true, fully support the warden's decision to separate Williams from his employment.

Under such circumstance, Colo. Const. art. XII, § 13(10) and § 24–50–125(5) prohibited the ALJ from examining the truth of the facts alleged to support the termination, except to the extent necessary to determine if unlawful discrimination was a cause of Williams' discharge.

In summary, we conclude that Regulation 701–3 was inapplicable here because Williams did not receive poor performance reviews in his first or second quarter. And, having determined that the racial discrimination claim was unsupported by the evidence, the ALJ was not authorized to examine the factual basis supporting Williams' termination for unsatisfactory performance. Therefore, the Board erred in affirming the ALJ's finding and conclusions.

The order is vacated.

CRISWELL and ROTHENBERG, JJ., concur.