Ruby A. SANCHEZ, individually and as parent and next friend of Brittany Sanchez, Plaintiff–Appellee,

v.

AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, Defendant–Appellant.

No. 02CA1378.

Colorado Court of Appeals, Div. II.

Oct. 9, 2003.

Certiorari Denied April 26, 2004.

Kiel, Trueax, and Gold, PC, Gregory A. Gold, Greenwood Village, Colorado, for Plaintiff–Appellee.

Harris, Karstaedt, Jamison and Powers, P.C., A. Peter Gregory, Rebecca K. Wagner, Englewood, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

In this action concerning personal injury protection (PIP) benefits, defendant, American Standard Insurance Company of Wisconsin (the insurance company), appeals the trial court's summary judgment in favor of plaintiffs, Brittany Sanchez and Ruby A. Sanchez (insureds). We reverse and remand with directions.

At issue in this appeal is the procedure an insurance company may use to review an insured's post-accident medical treatment where the insurance policy limits treatment to a managed care plan, in this case a preferred provider organization (PPO), but the insured receives treatment exclusively outside that plan.

Insureds maintain that because they received treatment outside of the PPO, they are entitled to a review of that treatment under the PIP examination procedure (PIP examination) in the Colorado Auto Accident

Reparations Act, § 10–4–701, et seq., C.R.S. 2002, rather than a medical review by a doctor within the PPO (PPO review). Insureds assert that a PPO review is not an independent or objective review because only the insurance company selects the reviewing physician, whereas the PIP examination procedure requires that the treating physician be selected through a statutory procedure in which insureds take part.

The insurance company contends that insureds' unilateral decision to receive treatment outside the PPO does not affect its ability, under the insurance policy, to select the means of reviewing insureds' medical treatment and that it has the option to select a PIP examination or a PPO review. We agree with the insurance company's position.

## I.

In September 2000, insureds were injured in an automobile accident caused by another driver. Insured Ruby Sanchez is the holder of an automobile insurance policy through the insurance company that provides PIP benefits. Under this policy, insureds were entitled to receive PIP medical coverage through a PPO. Any treatment outside the PPO had to be preapproved by the insurance company.

It is undisputed that insureds sought and received treatment from a medical specialist outside the PPO without obtaining preapproval by the insurance company.

After paying a portion of the treatment costs, the insurance company notified insureds in October 2000 that a $2,500 deductible applied to each injured party for treatment outside the PPO. There is no evidence in the record indicating whether the deductible has been invoiced or paid.

In December 2000, the insurance company demanded that insureds be examined by a doctor within the PPO for a PPO review.

Insureds refused to attend the scheduled PPO medical review and requested a PIP examination. To support their position, insureds sent the insurance company a copy of an order in an unrelated case against the insurance company's sister company. The trial court in that case ruled that the insured had "opted out" of her managed care plan when she no longer received any treatment within that plan. The court ruled that she was entitled to a PIP examination under § 10–4–706(6)(c), C.R.S.2002, and was not required to submit to the PPO review.

In January 2001, the insurance company here suspended insureds' PIP benefit payments based on their refusal to submit to the PPO review.

In June 2001, insureds filed this action against the insurance company for wrongful withholding of PIP benefits based on breach of contract and bad faith breach of an insurance contract. The parties filed cross-motions for summary judgment.

The trial court granted insureds' motion and entered summary judgment in their favor, after concluding that: (1) the insurance policy provided for a $2,500 deductible to obtain treatment outside the PPO; (2) insureds' agreement to this deductible allowed them to remove the "shackles" of managed care; (3) insureds elected to seek treatment completely outside the PPO and thereby "opted out" of the plan; (4) by operation of Colorado Division of Insurance Regulation 5–2–9(C)(7), 3 Code Colo. Regs., insureds' PIP coverage was no longer provided through the PPO; (5) the Division of Insurance interpretive bulletins upon which the insurance company relied were not binding; (6) the insurance company was not entitled to require insureds to submit to a PPO review; and (7) insureds could therefore demand a PIP examination.

Upon the parties' stipulation, the trial court entered final judgment on all claims.

## II.

The insurance company contends the trial court erred in granting partial summary judgment in favor of insureds. We agree.

### A.

We review the grant of a summary judgment motion de novo. *West Elk Ranch, L.L.C. v. United States,* 65 P.3d 479 (Colo. 2002).

Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. The nonmoving party is entitled to the benefit of all favorable inferences from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. C.R.C.P. 56(c); *West Elk Ranch, L.L.C. v. United States, supra.*

### B.

The purpose of the Colorado Auto Accident Reparations Act, as relevant here, is to avoid inadequate compensation to victims of automobile accidents. Section 10–4–702, C.R.S.2002. The Act serves to maximize insurance coverage and is to be liberally construed to further its remedial and beneficent purposes. *State Farm Mut. Auto. Ins. Co. v. Peiffer,* 955 P.2d 1008 (Colo.1998).

In 2003, the General Assembly amended the Act, but the provisions at issue here remain the same. *See* Colo. Sess. Laws 2003, ch. 315, § 10–4–706 at 1983.

The Act requires insurance companies to pay PIP benefits to cover post-injury medical expenses for treatments that are reasonable, necessary, and accident related. *Adams v. Farmers Ins. Group,* 983 P.2d 797 (Colo. 1999). Section 10–4–706(6), C.R.S.2002, establishes the PIP examination program, which is intended to provide timely investigation and resolution of disputed PIP claims submitted to an insurance company. The PIP examination determines whether the insured's treatment is reasonable, necessary, and accident related. Section 10–4–706(6)(e), C.R.S.2002; *see Adams v. Farmers Ins. Group, supra.*

The Act makes general provisions regarding review of PIP benefits, but distinguishes circumstances in which an insurance company provides PIP benefits through a "managed care arrangement." *See* § 10–4–706(2)(a)(I), C.R.S.2002 (an insurance company may offer PIP benefits for a lower premium through managed care arrangements). Managed care arrangements include a PPO. Section 10–4–706(2)(a)(I).

Generally, the PIP examination program is the "exclusive method for obtaining an independent medical examination from a health care practitioner other than a treating provider relating to a disputed PIP claim." Section 10–4–706(6)(a). Section 10–4–706(6)(c) confers upon any insurance company, insured, or injured person entitled to benefits the "right" to obtain a PIP examination, but that "right" does not apply to an insurance company providing PIP coverage through a managed care arrangement. Section 10–4–706(6)(c) also provides that "[n]othing in this section shall preclude a managed care organization from using its usual and customary review procedures."

An insurance company providing PIP benefits through a managed care arrangement must file its internal grievance and review procedures with the insurance commissioner. Once all internal grievance and review procedures have been exhausted, the insurer must provide written notice to the insured of the insured's right to seek a PIP examination. Section 10–4–706(2)(j)(I), C.R.S.2002.

However, the Act does not address the circumstances before us in which an insured contracts for benefits through a managed care plan, but seeks treatment exclusively outside the plan.

### C.

The Colorado Administrative Procedure Act sets forth rulemaking procedures, which include notice and a hearing. *See* § 24–4–103, C.R.S.2002. However, the statutory rulemaking requirements do not apply to "interpretative rules or general statements of policy, which are not meant to be binding as rules." Section 24–4–103(1), C.R.S.2002.

An interpretative rule serves the advisory function of explaining the meaning of a phrase in a statute or other rule and describes the factors an agency will consider in future administrative proceedings, but does not bind the agency to a particular result. In contrast, an administrative rule based on an agency's statutory authority to promulgate a substantive standard that carries the force of law is a legislative or substantive rule. An agency's own characteriza-

tion of a particular rule is some indication of the nature of the rule. *Regular Route Common Carrier Conference v. Pub. Utils. Comm'n*, 761 P.2d 737 (Colo.1988).

■ An administrative regulation must further the will of the General Assembly and may not modify or contravene an existing statute. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Colo. Div. of Ins. v. Midwest Mut. Ins. Co.*, 961 P.2d 1158 (Colo.App.1998).

■ When the meaning of an administrative regulation is in question, the agency's own interpretation is given great weight unless it would be inconsistent with the regulation itself. *Regular Route Common Carrier Conference v. Pub. Util. Comm'n, supra; Morgan v. Colo. Dep't of Health Care Policy & Fin.*, 56 P.3d 1136 (Colo.App.2002)(an agency's interpretation of a rule that it is charged with enforcing is generally entitled to deference); *see Colo. Div. of Ins. v. Midwest Mut. Ins. Co., supra* (addressing interpretation adopted by interpretive bulletin, as incorporated into regulation); *see also Mem'l Trusts, Inc. v. Beery*, 144 Colo. 448, 356 P.2d 884 (1960)(analyzing bulletin under same standard as regulation and invalidating bulletin where language was not sufficiently explicit).

### D.

The Colorado Division of Insurance regulations at issue here were promulgated under the authority of §§ 10–1–109 and 10–4–706(2)(g), C.R.S.2002. Regulation 5–2–9(C)(1) states that "an insurer, other than an insurer using a managed care plan, shall obtain any PIP examination through the PIP examination program." *See* § 10–4–706(6)(c) (insurers providing PIP coverage through managed care arrangements excepted from PIP examination program).

Where the insurance company provides PIP coverage through a managed care arrangement, Regulation 5–2–9(C)(6) states:

An injured party under a managed care plan may request a PIP examination only after exhausting all internal grievance and review procedures available under the plan. Once all internal grievance and review procedures have been exhausted, the insurer shall provide written notice to the injured party of the injured party's right to seek a PIP examination. In the event that no internal grievance and review procedures are available under the managed care plan, the injured party has the right to request a PIP examination upon denial of the claim by the insurer.

*See* § 10–4–706(2)(j)(I) (once managed care plan's internal grievance and review procedures have been exhausted, the insurance company must provide notice of the insured's right to seek a PIP examination).

However, "[i]f an injured party who elected to receive benefits pursuant to a managed care plan chooses to be treated exclusively outside the network, the PIP benefits are no longer being provided through a managed care arrangement and the insurer is entitled to obtain a PIP [examination]." Reg. 5–2–9(C)(7).

Treatment exclusively outside the network means "treatment the injured party elects to receive outside the network, after treating both inside and outside the network for a period of time, without returning to a network provider." Reg. 5–2–9(C)(7).

### E.

■ Here, the medical expense coverage provision in the insurance policy reads, in pertinent part:

We [the insurance company] reserve the right to determine, or to have someone on our behalf determine, whether any treatment is medically appropriate and necessary, and whether any charge incurred is fair, usual and customary. We also reserve the right to use managed medical care approaches and treatment options where appropriate, and to determine the medical necessity of proposed or incurred treatment plans.

(Emphasis omitted.)

The PIP endorsement states:

We will pay, in accordance with the Colorado Auto Accident Reparations Act, [§ 10–4–701, et seq.,] personal injury pro-

tection benefits for [medical expenses] incurred for bodily injury to an eligible injured person caused by an accident due to the use or operation of a motor vehicle. Medical expenses incurred through other than the [PPO] and not preapproved by us shall cause benefits payable under your policy to be reduced.... The insured party shall be responsible for the remaining balance owed to any non-participating provider(s) up to a maximum aggregate of $2,500 per person, per accident.

(Emphasis omitted.)

The insurance policy provides for an internal review process. The policy states that the insurance company's designated health care review agency "will pre-authorize, monitor, and review the appropriateness of health care services" in connection with personal injuries from an automobile accident, and the insured "shall cooperate with [the insurance company] in such review process."

It is undisputed that insureds received treatment "exclusively outside the network," and therefore, insureds' PIP benefits were no longer provided through a managed care arrangement. Reg. 5–2–9(C)(7). It follows that § 10–4–706(6)(c)—which precludes an insurance company that provides PIP benefits through a managed care arrangement from obtaining a PIP examination—no longer bars the insurance company from obtaining a PIP examination.

We interpret the statute to harmonize it with the applicable regulations and therefore hold that the insurance company may elect either the PIP examination or the PPO review procedure. In other words, we conclude the insurance company had the "right" or entitlement to obtain a PIP examination. See § 10–4–706(6)(c); see also Reg. § 5–2–9(C)(1). We further conclude the insurance company's "right" or entitlement to a PIP examination did not preclude the insurer from also using the PPO review.

Our interpretation is also consistent with the agency's own interpretations.

Bulletin 12–2000 was issued by the Commissioner of Insurance "to provide answers to questions arising in administering the personal injury protection (PIP) examination program," and to "provide guidance ... regarding the administration and process of the PIP examination program pursuant to § 10–4–706.6, C.R.S. [sic] and Regulation 5–2–9." Colo. Div. of Ins. Bulletin 12–2000, §§ I II.

The insurance company relies on the following language from the bulletin:

[Question No. 6:] Can an insurer use the PPO review process to deny further treatment from a non-PPO provider?

Answer: Yes, the insurer can use the PPO review process to deny further treatment from a non-PPO provider. The contract provisions are not waived because the claimant treats outside the PPO network.

The bulletin also states: (1) a claimant who has selected a PPO option must exhaust the PPO complaint procedures before requesting a PIP examination; (2) an insurance company may request a PIP examination if a claimant who has selected a PPO option is treating outside the PPO; (3) in such a case, the insurance company may require the insured to be examined in accordance with the insurance contract provisions and PPO procedures; and (4) an insurance company cannot deny PIP benefits to an insured who receives treatment outside the PPO, but "may obtain a PIP examination pursuant to Regulation 5–2–9."

The trial court acknowledged the language in Bulletin 12–2000, but reasoned that it was an interpretive rule and not adopted through the Administrative Procedure Act's notice and hearing provision, § 24–4–103. Thus, the trial court concluded it was not a binding regulation.

■ While we agree the bulletin was not binding, we generally defer to the agency's own interpretations, even if nonbinding, so long as they do not modify or contravene an existing statute. See Morgan v. Colo. Dep't of Health Care Policy & Fin., supra.

Here, we perceive no conflict between the agency's interpretations in the regulations and the bulletin. The bulletin explains that an insurance company may use its PPO review process to deny further treatment from a non-PPO provider, that an insurance com-

pany "may" request a PIP examination, and that an insured's treatment outside the PPO does not waive other policy provisions such as internal review procedures. These interpretations by the agency are reconcilable with the exhaustion requirement and recognize that PIP benefits for treatment received exclusively outside the PPO are "no longer provided through a managed care arrangement." *See* § 10–4–706(2)(j)(I); Reg. 5–2–9(C)(7).

We thus conclude, contrary to insureds' contention, that the agency's interpretations are consistent with the terms of the statutory scheme. We further note that the agency's interpretations have remained consistent. The deposition of the special assistant to the Commissioner of Insurance, included in the record, clarifies the Commissioner's position that when an insured receives treatment exclusively outside the PPO, the insurance company *may,* at its option, use the PIP examination process, but is not required to do so. The assistant explained that the position of the Division of Insurance is that the insurance company has the choice to select either the PIP examination process or its PPO review process.

There is also evidence in the record concerning a separate case involving the same insurance company. In October 2000, the Division of Insurance informed the insured in that case that "the law allows [the insurance company] to exhaust the internal grievance and review procedures available under the managed care organization according to the [insured's] PPO endorsement." The letter stated: "Once the PPO grievance and review procedures are exhausted, if [the insured] still disagrees with the insurance company's determination, [the insured] may request and pay for an independent medical examination."

We acknowledge insureds' argument that the insurance company's ability to use the PPO review defeats the benefit of their bargain to receive treatment outside the PPO. However, the insurance policy limits insureds' liability to the non-PPO treatment providers to a maximum of $2,500 per person, per accident. Further, insureds are not precluded from obtaining a PIP review, but

they are required first to exhaust the PPO procedure, the relevant review procedure contained in the insurance policy. *See* § 10–4–706(2)(j)(I); Reg. 5–2–9(C)(6).

█ In summary, we conclude that where, as here, the insurance policy limits the insureds' PIP benefits to treatment within a managed care plan such as a PPO, the unilateral decision of the insureds to receive treatment outside the managed care plan does not preclude the insurance company's ability under the insurance policy to select the means of reviewing insureds' medical treatment. The insurance company has the option to select the PIP examination procedure or its PPO review process. Accordingly, the trial court erred in granting partial summary judgment in favor of the insureds.

The partial summary judgment entered in favor of insureds is reversed, and the case is remanded with directions to enter judgment in favor of the insurance company, in accordance with the views expressed in this opinion.

Judge MARQUEZ and Judge GRAHAM concur.