**CENDANT CORPORATION & SUBSIDIARIES, Plaintiff–Appellee,**

v.

**DEPARTMENT OF REVENUE, State of Colorado and Roxanne Huber in her official capacity as the Executive Director of the Colorado Department of Revenue, Defendants–Appellants.**

No. 08CA0103.

Colorado Court of Appeals, Div. II.

Feb. 5, 2009.

As Modified on Denial of Rehearing July 2, 2009.

Silverstein & Pomerantz LLP, Neil I. Pomerantz, Robert R. Gunning, Denver, Colorado; Horwood Marcus & Berk Chartered, Fred O. Marcus, David A. Fruchtman, David S. Ruskin, Chicago, Illinois, for Plaintiff–Appellee.

John W. Suthers, Attorney General, Robert H. Dodd, Jr., Assistant Attorney General, Denver, Colorado, for Defendants–Appellants.

Opinion by Judge TAUBMAN.

This case involves the question of what plaintiff, Cendant Corporation and Subsidiaries (Cendant), knew, and when did it know it, regarding the existence of a combined-consolidated income tax return filing option for certain Colorado corporations. Because we conclude that Cendant is deemed to have had knowledge of this filing option before the deadline for filing its 2001 tax return, we agree with defendants, the Colorado Department of Revenue (DOR) and Roxanne Huber, DOR's Executive Director, that the trial court's order concluding that DOR had violated Cendant's due process rights must be reversed.

## I. Background

For tax year 2001 Cendant was an affiliated corporate group and was thus required by Colorado law to file its corporate income tax return as a "combined" return. The due date for Cendant's filing was October 15, 2002. On October 4, 2002, Cendant filed the combined return. On November 7, 2002, three weeks after the deadline, Cendant filed an amended return, seeking to change its "combined" return to a "combined-consolidated" corporate income tax return.

DOR permitted four filing alternatives for certain corporate income tax returns for the 2001 tax year: (1) separate returns, (2) combined returns, (3) consolidated returns, and (4) combined-consolidated returns.

According to Cendant's Vice President of State and Local Taxes, Andrew Solomon, who oversaw the preparation and filing of Cendant's Colorado tax return for 2001, he

conducted due diligence investigations into Colorado law, regulations, tax return forms, and tax return form instructions. He was unaware, until late October 2002, after the filing deadline, that Colorado allowed the combined-consolidated filing option.

Upon learning of the combined-consolidated option, Cendant filed an amended return using this option. In so doing, it sought to reduce its tax liability by $8 million by including two subsidiaries, Avis and Galileo, which it could not include in its combined return because it had acquired them within the previous two years. In the amended return, Cendant also changed its apportionment factor election.

In 2005, after undergoing a tax audit, Cendant received a letter from DOR denying its claim for an $8 million refund and rejecting its amended 2001 return. Cendant then appealed the decision administratively.

Huber issued Final Determination DD–599 in 2006, ruling that Cendant's election to file a combined-consolidated return was untimely. The director rejected Cendant's amended filing, citing DOR Regulation 39–22–305, which precluded late filing of a corporate consolidated election. *See* 1 Code Colo. Regs. 201–2. Similarly, the director rejected Cendant's amended apportionment factor election as a violation of DOR Regulation 39–22–303.1. *See id.*

Cendant sought relief from Final Determination DD–599 in the trial court. Following a bench trial, the court issued an order reversing the director's Final Determination and requiring DOR to (a) accept Cendant's amended return, and (b) pay Cendant's refund plus interest accruing from the date of overpayment.

The trial court held that DOR's rejection of Cendant's amended return violated its right to due process and that absent sufficient notice of the filing alternatives, Cendant could not meaningfully elect the best filing option. In so ruling, the trial court concluded: "[DOR's] position in this case is contrary to Colorado law. Therefore, deference to the [DOR's] interpretation is neither required nor appropriate." The trial court made the following factual findings:

(1) The combined-consolidated filing alternative was unique to Colorado in tax year 2001. Colorado was the only state in the country that allowed for that filing alternative.

(2) For tax year 2001, the only information source for a corporate taxpayer about the Colorado filing methods was in the DOR's annual manual, which contained the filing form and instructions and the Colorado statutes and regulations related to filing.

(3) In 2002, 2005, and 2006, DOR attempted to clarify and describe the four filing alternatives available.

(4) Before filing Cendant's 2001 tax return, Solomon reviewed Colorado tax materials and secondary authorities, none of which mentioned the combined-consolidated filing alternative.

(5) On October 24, 2002, soon after the due date for Cendant's 2001 tax return, Solomon attended a private tax-related conference and learned by chance that Colorado allowed certain corporations to file a combined-consolidated return. Before the conference, he was only aware of the other options.

(6) Solomon learned of the combined-consolidated option from an attendee at the conference who worked at another large corporation. That person had learned of this alternative directly from a State of Colorado tax auditor. Solomon then contacted two tax practitioners, one of whom knew about the combined-consolidated option.

(7) Cendant could not have legally elected to file a 2001 consolidated return; but could have filed a combined-consolidated return.

DOR and Huber now appeal the trial court's order.

## II. Standard of Review

 When reviewing a mixed question of law and fact, we review a trial court's legal conclusions de novo. *Lawry v. Palm,* 192 P.3d 550, 558 (Colo.App.2008). However, a trial court's finding of facts will not be disturbed unless clearly erroneous. *Arapahoe*

*County Bd. of Equalization v. Podoll,* 935 P.2d 14, 18 (Colo.1997). The trier of fact, and not the reviewing court, must determine all issues relative to the sufficiency, credibility, and weight of the evidence. *Cottonwood Hill, Inc. v. Ansay,* 709 P.2d 62, 64 (Colo. App.1985).

### III. Statutory and Regulatory Interpretation

DOR contends that the trial court erred in reversing Huber's decision to reject Cendant's amended 2001 return because the then existing statutory and regulatory scheme permitted the filing of combined-consolidated corporate income tax returns. We agree.

■ Statutory interpretation is a question of law that we review de novo. *United Airlines, Inc. v. Indus. Claim Appeals Office,* 993 P.2d 1152, 1157 (Colo.2000); *Petron Dev. Co. v. Wash. County Bd. of Equalization,* 91 P.3d 408, 410 (Colo.App.2003), *aff'd,* 109 P.3d 146 (Colo.2005).

■ When interpreting statutes and regulations, we look to the ordinary and common meaning of the language in a provision, giving effect to every word and term whenever possible. *Petron Dev. Co.,* 91 P.3d at 410.

■ Further, we read and consider the statutory and regulatory scheme as a whole to give consistent, harmonious, and sensible effect to all its parts. *Skyland Metropolitan Dist. v. Mountain West Enterprise, LLC,* 184 P.3d 106, 117 (Colo.App.2007); *see also Williams v. Colo. Dep't of Corrections,* 926 P.2d 110, 112 (Colo.App.1996) (we apply basic rules of statutory interpretation when construing an administrative regulation, and read administrative regulations as a whole).

■ "A tax statute is no different from any other statute and must be construed as a whole to give consistent, harmonious, and sensible effect to all its parts." *Jefferson County Bd. of County Comm'rs v. S.T. Spano Greenhouses, Inc.,* 155 P.3d 422, 424 (Colo.App.2006).

■ The interpretation of a statute or regulation by the agency charged with its administration is ordinarily accorded deference. *Stell v. Boulder County Dep't of So-*cial Services, 92 P.3d 910, 916 (Colo.2004); *Pub. Serv. Co. v. Trigen–Nations Energy Co.,* 982 P.2d 316, 322 (Colo.1999). "If it has a reasonable basis in law and is warranted by the record, a court will generally accept an agency's interpretation of the statute or regulation." *Stell,* 92 P.3d at 916. "However, we will reverse an administrative agency's determination if the agency erroneously interpreted the law." *Id.*

■ We conclude that the publication in 2002 of the applicable statutes and regulations gave sufficient notice to Cendant of the combined-consolidated filing option.

The Colorado C Corporation Income Tax Act, sections 39–22–300.1 to 39–22–310, C.R.S.2008 (the Act), establishes the laws relating to filing income tax returns of C corporations. A "C corporation" is any organization taxed as a corporation for federal income tax purposes. § 39–22–103(2.5), C.R.S.2008. Further, an "affiliated group," as the term is used in section 39–22–303(10) and (11), C.R.S.2008, means "one or more chains of includable C corporations connected through stock ownership with a common parent C corporation." § 39–22–303(12), C.R.S. 2008.

The Act states: "In the case of an affiliated group of C corporations, the executive director may require, or the taxpayer may file, a combined report ...." § 39–22–303(11)(a), C.R.S.2008. This provision governed Cendant's 2001 combined report. *See* Ch. 309, sec. 1, § 39–22–303(11), 1985 Colo. Sess. Laws 1274–75 (subsection added); Ch. 330, sec. 8, § 39–22–303(11), 1992 Colo. Sess. Laws 2270–72 (amended).

The same provision also states, "The executive director shall not require returns to be made on a consolidated basis, but an affiliated group of C corporations may elect to file a consolidated return as otherwise provided in this article." § 39–22–303(11)(d), C.R.S.2008. Another provision notes that "[a]n affiliated group of C corporations ... may elect to make a consolidated return." § 39–22–305(1), C.R.S.2008.

The statutes also delegate authority to DOR to promulgate regulations governing

combined and consolidated returns, which it did. *See* §§ 39–22–303(13), 39–22–305(2), C.R.S.2008.

The regulation governing the filing of consolidated returns states:

> If all or any part of the affiliated group is required to file a combined return (pursuant to § 39–22–303(11)(a), C.R.S. and the regulations thereunder), then a combined report shall be filed that includes all the corporations required to file a combined return with such affiliated group. The affiliated group electing to file a consolidated return shall be treated as one taxpayer for purposes of filing the combined report.

DOR Reg. No. 39–22–305(2)(b), 1 Code Colo. Regs. 201–2.

Regulation 39–22–303.11(a) concerns filing combined returns and includes this example:

> Unitary affiliated group Q–U acquired unitary affiliated group V–Z on October 13, 1993. The tests of unity are met between members of group Q–U on the one hand and members of group V–Z on the other but there have not been at least three tests of unity met between the two groups. Group Q–U would be required to file one combined report, and group V–Z would be required to file another combined report. The two groups could elect to file a consolidated return under 39–22–305 CRS if they so qualify.

DOR Reg. No. 39–22–303.11(a)(iv), 1 Code Colo. Regs. 201–2.

Neither party disputes that the General Assembly properly delegated authority to DOR to promulgate corporate tax regulations. *See* §§ 39–22–301 to –310, C.R.S.2008. After delegation of authority by the legislature, it became DOR's responsibility to promulgate clear and unambiguous standards.

We look at the ordinary and common meaning of the language in the statutes and regulations governing combined and consolidated corporate tax return filings.

The plain statutory language provides that combined filing is mandatory for some corporations. *See* § 39–22–303(11)(a). However, consolidated filing is always a choice. *See* §§ 39–22–303(11)(d), 39–22–305(1). The stat-utory language does not prohibit a combined-consolidated filing.

The option to file a *consolidated* return is discussed in both the consolidated filing statute, section 39–22–305, and the combined filing statute, section 39–22–303(11)(d). Because the consolidated election is mentioned in the combined filing statute, that statute suggests that the two filings options can be utilized together in one return and are not mutually exclusive. However, we look to the applicable regulations for further guidance.

We read the language of the regulations together with the statutes. The above-quoted example in the regulation on *combined* filings states that two affiliated groups, Q–U and V–Z, were required to file combined returns. *See* DOR Reg. No. 33–22–303.11(a)(iv). The example then explicitly provides that the same two groups could also "elect to file a consolidated return." *Id.* Thus, this hypothetical example contemplates the combined-consolidated filing option because affiliated groups Q–U and V–Z are each required to file a combined return, but may also choose to file a consolidated return.

Similarly, the plain language of the regulation on *consolidated* filings provides for the combined-consolidated filing option.

> If all or any part of the affiliated group is required to file a combined return ... then a combined report shall be filed that includes all the corporations required to file a combined return within such affiliated group. The affiliated group electing to file a consolidated return shall be treated as one taxpayer for purposes of filing the combined report.

DOR Reg. No. 39–22–305(2)(b). Thus, when an affiliated group must file a combined return, it may also elect to file a consolidated return.

We agree with DOR that the above statutes and regulations establish that for tax year 2001 an affiliated group may elect a consolidated filing, at the same time that the group is required to file a combined report. Thus, both can be completed together as a combined-consolidated return.

Although Cendant correctly notes that the various changes made by DOR beginning in

tax year 2002 advised corporate taxpayers more explicitly of the combined-consolidated filing option, we agree with DOR that the published statutes and regulations in effect for tax year 2001 "clearly allow combined and consolidated returns together." We further agree that this interpretation has a reasonable basis in the law and, therefore, we give deference to it and conclude that the trial court erred in its interpretation of the applicable statutory and regulatory provisions.

Moreover, if Cendant was unclear about the statutory and regulatory scheme, the record indicates it could have availed itself of DOR's help-line prior to its October 15, 2002 deadline.

## IV. Due Process

■ DOR next contends that the trial court erred in concluding that it violated Cendant's due process rights by not advising Cendant and others of the combined-consolidated filing option and that Cendant could not determine the availability of that option from then applicable DOR statutes, regulations, and publications. Because we have concluded that the laws and regulations as written in 2002 were sufficiently clear to apprise Cendant of this option, we necessarily conclude that its due process rights were not violated.

■ Due process requires that the government give notice to individuals of government actions which would deprive those individuals of a constitutionally protected life, liberty, or property interest. U.S. Const. amend. XIV; *see People v. Young*, 859 P.2d 814, 818 (Colo.1993) (no person shall be deprived of liberty without due process of law).

Cendant does not categorize what type of due process challenge it makes, and so we address both substantive and procedural due process.

### A. Substantive Due Process

Substantive due process requires that the substance of a law or governmental action is compatible with the Constitution. Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 14.6, at 672 (4th ed. 2007) (Rotunda). A

law may violate substantive due process when it goes "beyond any proper sphere of government activity." *Id.* Substantive due process violations often, but do not always, concern fundamental rights. *Young*, 859 P.2d at 818.

■ Although the contours of substantive due process are not precise, *Stemler v. City of Florence*, 126 F.3d 856, 867 (6th Cir.1997), substantive due process requires that the law contain explicit standards in order to prevent arbitrary and discriminatory enforcement. *People v. Holmes*, 959 P.2d 406, 415 (Colo. 1998).

When the government implements laws that adversely affect individual interests, the publication of those laws provides adequate notice to satisfy constitutional due process. *See United States v. Locke*, 471 U.S. 84, 108, 105 S.Ct. 1785, 1799–1800, 85 L.Ed.2d 64 (1985) (citing *Texaco, Inc. v. Short*, 454 U.S. 516, 532, 102 S.Ct. 781, 793, 70 L.Ed.2d 738 (1982)) (adequate notice given by simply enacting a law, publishing it, and "affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements"); *Bd. of Educ. v. Wilder*, 960 P.2d 695, 705 (Colo. 1998) ("when statutory requirements are at issue, parties receive adequate notice through publication"); *McInerney v. Public Employees' Retirement Ass'n*, 976 P.2d 348, 353 (Colo.App.1998) (adequate due process provided by legislative enactment).

■ Every person is deemed to have constructive notice of the law and what it requires. *People v. Rester*, 36 P.3d 98, 101 (Colo.App.2001) (criminal statutes that are not unconstitutionally vague give constructive notice to the public of the proscribed conduct). Every person is presumed to know the law if the law is definite and knowable. *Holmes*, 959 P.2d at 414. "The rule that ignorance of the law will not excuse its violation is limited, however, by the constitutional demands of due process." *Id.*

■ Accordingly, as the trial court recognized, a secretive law may violate substantive due process. *See United States v. Washabaugh*, 2008 WL 203012, *1 (S.D.Ohio No.

3:07–po–253, Jan. 22, 2008) (slip op.). There can be no secret laws because they "violate very basic considerations of due process." *Id.; see also Dana Corp. v. City of Toledo*, 2000 WL 1867257, \*2 (Ohio Ct.App. No. L–00–1128, Dec. 22, 2000) (unpublished order) (agencies cannot enforce rules that were not properly enacted without violating due process: "There can be no secret rules. There can be no secret regulations.").

We conclude DOR did not violate Cendant's substantive due process rights because, as discussed above, Cendant had constructive knowledge of the combined-consolidated filing option.

Even if Cendant did not subjectively know of the combined-consolidated filing option, it was charged with constructive knowledge of that option based on the then existing statutes and regulations.

Here, the trial court found that "[f]or tax year 2001, no resources existed that provided a taxpayer with notice of the Combined-consolidated filing alternative." Further, the trial court concluded that "[b]etween 1999 and 2002, absolutely no resources were available to a taxpayer that discussed the Combined-consolidated filing alternative."

We conclude these factual findings are clearly erroneous. The publication of the statutes and regulations discussed above provided adequate notice of the combined-consolidated filing option, as required by due process.

Cendant had a reasonable opportunity to familiarize itself with the written statutes and regulations and is thus charged with constructive knowledge of them. Thus, Cendant's lack of subjective knowledge of the combined-consolidated option does not excuse it from compliance with the law requiring it to make its election prior to the deadline. *See* DOR Reg. No. 39–22–305, 1 Code Colo. Regs. 201–2 (election for consolidation may not be changed after the due date for filing the return).

Because we conclude that Cendant's substantive due process rights were satisfied by the publication of the applicable statutes and regulations, we hold that the trial court erred to the extent it determined that DOR violated those rights.

### B. Procedural Due Process

■■■■ Procedural due process also requires that an adequate process be afforded before the government deprives a person of a life, liberty, or property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *People in Interest of D.G.*, 733 P.2d 1199, 1202 (Colo.1987); Rotunda, at 671. This type of due process requires that an agency acting in a quasi-judicial capacity give notice of an adverse action and afford a hearing to affected individuals. *Douglas County Bd. of Comm'rs v. Pub. Utils. Comm'n*, 829 P.2d 1303, 1310 (Colo.1992).

■■■ DOR did not violate Cendant's procedural due process rights. DOR, as an agency, properly gave notice to Cendant that it rejected its amended 2001 corporate tax filing. Cendant appealed the decision administratively and through the court process, and thus was afforded an adequate opportunity to be heard.

### V. Conclusion-Consolidated Return Deadline

■■■ Because the trial court decided in Cendant's favor, it did not address whether Cendant's election to file a combined-consolidated return was timely. Since we have reversed the trial court's ruling on that issue, we address the timeliness issue.

DOR contends that consolidation must be elected by the due date for the return, plus extensions, when an entity files a combined-consolidated return. Cendant argues that the only limit to filing a combined-consolidated return is the statute of limitations. We agree with DOR.

■■■■ We consider the agency's interpretation when a tax statute does not provide specific guidance on a particular issue. *S.T. Spano Greenhouses*, 155 P.3d at 425. When the meaning of a regulation is disputed, the agency's own interpretation is given great weight unless it is inconsistent with the regulation itself. *Sanchez v. American Standard Ins. Co.*, 89 P.3d 471, 475 (Colo.App.2003).

We will accept an agency's interpretation of the regulation and defer to its interpretation if it has a reasonable basis in the law and is warranted by the record. *Stell*, 92 P.3d at 916.

Section 39–22–305(2), C.R.S. 2008, does not establish a time limit for filing a combined-consolidated return. Instead, it delegates to the director the authority to prescribe regulations regarding consolidated returns. Pursuant to that authority, the director issued Regulation 39–22–305, which provides in pertinent part:

(1) Election to file a consolidated return.

(a) The election to filed a consolidated C Corporation return afforded under § 39–22–305, C.R.S. may not be changed after the due date for filing the return including extensions of time for filing the return.

1 Code Colo. Regs. 201–2.

Cendant nonetheless argues that the regulation should only apply to an election to file a consolidated return and not to an election to file a combined-consolidated return. However, we defer to DOR's interpretation, which we conclude is reasonable.

First, the agency's interpretation is warranted by the record. The director, when making her final determination, discussed the careful synthesis of the related statutes and regulations and concluded that the consolidated-combined return is a hybrid type of return, rather than a completely different type of return. Under that premise, the director concluded that the consolidated-combined return is subject to the consolidation regulations and its prescribed deadline.

Second, the agency's interpretation has a reasonable basis in the law because it derives from the existing statutes and regulations that pertain to both consolidated and combined returns. As we concluded above, the applicable statutes and regulations establish that for tax year 2001, an affiliated group could file a consolidated return regardless of whether the group was required to file a combined report. Thus, we conclude that precluding an affiliated group from changing its election to file a consolidated return but permitting it to do so if its initial filing included a combined report would be illogical

and frustrate the purpose of the statutes and regulations. Under such circumstances, Cendant was required to comply with regulation 39–22–305, which prohibits a change of election beyond the filing deadline, plus extensions.

Therefore, we conclude that Cendant's amended return, filed on November 7, 2002, was untimely because regardless of whether Cendant was required to file a combined return it was able to elect whether to file a consolidated return and was required to do so not later than the October 15, 2002 deadline.

## VI. Conclusion

To the extent the trial court afforded Cendant equitable relief by allowing the filing of an untimely amended return because of a perceived due process violation, we must set aside that part of the trial court's order as well.

The order is reversed.

Judge CARPARELLI concurs.

Judge CONNELLY specially concurs.

Judge CONNELLY specially concurring.

Cendant's claim rests on the premise that state taxing authorities have a constitutional obligation, rooted in due process, to provide affirmative notice of potentially favorable tax code strategies. The majority opinion accepts this premise but concludes the Colorado Department of Revenue (DOR) provided sufficient notice to satisfy due process. Because I would reject the premise, I concur in the result but not in the majority's reasoning.

Tax codes are notoriously abstruse. An eminent judge who authored many landmark tax opinions once described the federal code as a "fantastic labyrinth[ ]," and confessed its words "merely dance before my eyes in a meaningless procession: cross-reference to cross-reference, exception upon exception—couched in abstract terms that offer no handle to seize hold of." Learned Hand, *Eulogy of Thomas Walter Swan*, 57 Yale L.J. 167, 169 (1947); *see also Trantina v. United States*, 512 F.3d 567, 570 (9th Cir.2008) (referring to "the labyrinth of the federal tax

code"); *Branum v. Commissioner,* 17 F.3d 805, 808 (5th Cir.1994) ("This case takes us through the intricate labyrinth that is our Tax Code.").

The Supreme Court has written: "The proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws." *Cheek v. United States,* 498 U.S. 192, 199–200, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). Given "the complexity of the tax laws," Congress has provided "special treatment of criminal tax offenses" by displacing "the common law presum[ption] that every person knew the law." *Id.* at 199–200, 111 S.Ct. 604. To be *criminally* liable, a taxpayer subjectively must have known of and intentionally violated a tax code obligation. *Id.* at 200–04, 111 S.Ct. 604.

Because this case does not involve criminal or even civil tax penalties, it should be resolved by applying the common-law presumption, *id.* at 199, 111 S.Ct. 604, that Cendant knew its tax filing options. I respectfully submit the majority opinion begins by asking the wrong question. Asking "what Cendant knew and when it knew it" would be appropriate in a criminal tax case, but has no place here. *Cf. United States v. Harris,* 942 F.2d 1125, 1131–35 (7th Cir.1991) (tax code provisions may support civil liability yet be "too uncertain" for criminal liability); *United States v. Mallas,* 762 F.2d 361, 364–65 (4th Cir.1985) (recognizing difficulty of "translating" tax provisions "into language the common world will understand" but holding "without that fair warning" government is limited to civil rather than criminal enforcement of tax code); *United States v. Critzer,* 498 F.2d 1160, 1163–64 (4th Cir.1974) (a "pioneering interpretation of tax liability" under "vague or highly debatable" tax code provisions must occur in a civil rather than criminal proceeding).

There is no due process requirement, either substantive or procedural, for DOR to inform Cendant of its right to file a "combined-consolidated" tax return. Cendant concedes, as it must to claim entitlement to file such a return, that such returns are allowed by Colorado statutes and regulations.

Its complaint that DOR should have done a better job of publicizing or explaining this option to corporate taxpayers has no constitutional grounding.

This case involves no fundamental rights that could give rise to substantive due process protections. *Cf. Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (substantive due process precludes state from outlawing consensual sodomy by adult males in privacy of home); *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (substantive due process protects "the fundamental right of parents to make decisions concerning the care, custody, and control of their children"). Nor does it involve any penalty that could trigger substantive due process protections. *Cf. State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (discussing constitutional limits on punitive damages). Finally, while Cendant has multi-state operations, it does not challenge Colorado's taxing authority on this ground. *Cf. MeadWestvaco Corp. v. Illinois Department of Revenue,* 553 U.S. 16, 128 S.Ct. 1498, 170 L.Ed.2d 404 (2008) (discussing substantive constitutional limits on taxation of out-of-state corporate income).

There likewise is no colorable claim that Cendant had a procedural due process right to better notice of its tax filing options. The Colorado case relied on by the majority involved whether *criminal* liability could be imposed for violating administrative rules precluding prison "contraband" where the rules provided inadequate notice of what constituted contraband. *People v. Holmes,* 959 P.2d 406 (Colo.1998). The majority also cites unreported out-of-state cases for the proposition that "secret laws" violate due process. Whatever this might mean in another context, it does not help Cendant. The relevant Colorado statutes and regulations indisputably were validly promulgated and published; in other words, they were not "secret."

Cendant accordingly had no right, constitutional or otherwise, to change its tax status after the time for doing so had passed. It may have first realized after this deadline that there was an alternative, potentially more advantageous way to have filed its re-

turn. But DOR was entitled to enforce its filing deadlines, which serve the necessary interest of bringing finality to tax years. There was no basis to estop DOR from enforcing those deadlines and to require it to accept Cendant's untimely tax return amendment.