**MANOR VAIL CONDOMINIUM ASSOCI- ATION, a Colorado non-profit corpo- ration, Plaintiff–Appellant,**

v.

**BOARD OF EQUALIZATION OF THE COUNTY OF EAGLE and the Assessor for the County of Eagle, Defendants– Appellees.**

No. 96CA2132.

Colorado Court of Appeals, Div. V.

March 19, 1998.

Constantine, Anderson & O'Brien, P.C., Thomas J. Constantine, Kevin J. O'Brien, Littleton, for Plaintiff–Appellant.

James R. Fritze, County Attorney, Robert W. Loeffler, Deputy County Attorney, Eagle, for Defendants–Appellees.

Opinion by Judge ROTHENBERG.

Plaintiff, Manor Vail Condominium Association (taxpayer), appeals the summary judgment entered in favor of defendants, Eagle County Board of Equalization and the Eagle County Assessor. We affirm.

Manor Vail is a condominium complex consisting of 123 individually owned residential units. Taxpayer is a non-profit condominium association. In 1991, taxpayer owned certain improved real property located at Manor Vail including a lobby, a restaurant, 600 square feet of meeting rooms and conference space, and a swimming pool. These improvements were not included as general common elements in Manor Vail's condominium declara-

tions but were carried as separately scheduled properties on the Assessor's records. Thus, they were separately assessed and taxed.

In 1991, taxpayer filed an action against defendants claiming, *inter alia*, that taxpayer was being taxed twice for these improvements because their value was inherently included in the actual value of the individual condominium units. That lawsuit was resolved by a stipulation between the parties later approved as an order of the court.

Although the 1991 lawsuit initially involved only certain improvements, the stipulation ultimately provided that taxpayer would convert all of the improvements into general common elements of the condominium project which would be owned in common by the owners of the residential units in allocated shares. Upon conversion, they would be removed from the tax rolls as separately described property and would not be separately taxed.

The present action arose in 1995 when the Manor Vail condominium owners received notices of valuation on their individual units for that tax year which included an entry referring to and valuing certain "commercial improvements." The value of these so-called commercial improvements consisted of each unit's proportionate share of the actual value of the restaurant and the meeting rooms, which were assessed at the non-residential ratio of 29 percent, *see* § 39–1–104(1), C.R.S. 1997, as opposed to the lesser residential ratio of 10.36 percent applicable to the 1995 tax year. *See* § 39–1–104.2(3)(e), C.R.S.1997.

After several individual unit owners unsuccessfully protested their valuations, taxpayer filed this action challenging the methodology used by defendants in assessing the condominium units for tax year 1995. Taxpayer alleged that: (1) defendants had separately taxed and assessed the restaurant and meeting rooms (the non-residential common elements) in violation of § 38–33.3–105(2), C.R.S.1997; (2) defendants had twice valued the non-residential common elements because their value was inherently included in the actual value of the individual condominium units; (3) defendants' actions in twice valuing the non-residential common elements

resulted in double taxation and imposed an unconstitutionally greater burden upon the members' units than upon similarly situated property; (4) defendants had breached the terms of the stipulation resolving the 1991 lawsuit by separately assessing the non-residential common elements; and (5) defendants had improperly determined the actual market value of the non-residential common elements.

Defendants moved for partial summary judgment as to the first four claims for relief, and taxpayer filed a cross-motion for summary judgment on the same claims. The trial court granted defendants' motion and dismissed the first four claims, the fifth claim was settled, and a final judgment was entered by the trial court.

## I.

■ Taxpayer first contends the trial court erred by failing to classify the restaurant and meeting rooms as residential improvements which are taxable at the lower ratio of 10.36 percent, rather than as non-residential improvements taxable at 29 percent. Taxpayer maintains that the residential classification is required because the building containing these improvements is used predominantly as a place of residence. We disagree.

Section 39–1–102(14.3), C.R.S.1997, provides in pertinent part that:

"Residential improvements" means a building, *or that portion of the building*, designed for use predominantly as a place of residency by a person, a family, or families. The term includes buildings, structures, fixtures, fences, amenities, and water rights *which are an integral part of the residential use*. (emphasis added)

■ "Designed for use" in this context means that the building, or a portion thereof, is devoted to or intended for actual use predominantly as a place of residence. *See Mission Viejo Co. v. Douglas County Board of Equalization*, 881 P.2d 462 (Colo.App.1994).

■ The statutory scheme contemplates that a single building may have multiple uses, and in such cases, the building is to be

apportioned and its portions classified according to their respective uses. Only if a portion is predominantly used as a residence is it to be classified as residential. *See* §§ 39–1–102(14.3) and 39–1–103(9)(a), C.R.S. 1997.

According to the uncontroverted evidence here, the restaurant and meeting rooms are housed in a building also containing a number of residential condominium units, but they are open to and used by the general public. Taxpayer presented no evidence and does not claim that the restaurant and meeting rooms are used predominantly as residences or are an integral part of the residential use of the individual condominium units.

■ Instead, in an affidavit filed with the trial court, taxpayer submitted a conclusory allegation that the restaurant and meeting rooms must be classified as residential because they are amenities to the unit owners and because they are unprofitable. However, the profitability of the property is not controlling. *See Mission Viejo Co. v. Douglas County Board of Equalization, supra* (commercial nature of property does not depend upon its profitability). Nor was the trial court required to classify the restaurant and meeting rooms as residential improvements merely because taxpayer's affidavit was undisputed.

Accordingly, we reject taxpayer's contention that the restaurant and meeting rooms were erroneously classified as non-residential improvements.

## II.

■ Taxpayer next contends defendants violated § 38–33.3–105(2), C.R.S.1997, in assessing the restaurant and meeting rooms. Again, we disagree.

The statute provides in pertinent part that:

In a condominium ... with common elements, each unit that has been created, *together with its interest in the common elements,* constitutes for all purposes a separate parcel of real estate and must be separately assessed and taxed. *The valuation of the common elements shall be assessed proportionately to each unit* ... and the common elements shall not be separately taxed or assessed. (emphasis added)

Before April 30, 1993, the applicable taxation statute provided that common property owned by a qualified homeowners' organization was to be:

appraised and valued with the residential real property owned by the members of the organization who are entitled to the exclusive use, benefit, and enjoyment of the property owned by the organization.

Colo. Sess. Laws 1984, ch. 271, § 39–1–103(10) at 987. *See also* § 38–33–104, C.R.S. 1997 ("The valuation of the general and limited common elements shall be assessed proportionately upon the individual air space unit in the manner provided in the [condominium] declaration").

However, § 39–1–103(10) was amended, effective April 30, 1993, and now provides that:

Common property or common elements within a common interest community as defined in the 'Colorado Common Interest Ownership Act,' article 33.3 of title 38, C.R.S., shall be appraised and valued pursuant to the provisions of section 38–33.3–105, C.R.S.

Section 39–1–103(10), C.R.S.1997.

Following these amendments, the State Property Tax Administrator (Administrator) promulgated new procedures to account for and to allocate the value of common elements within a common interest community. The new procedures became effective January 1, 1995, and provide that:

When the common interest community criteria are met, *residential common elements are not to be assessed separately* from the living units even if the common elements are not exclusively used by members of the common interest community or if there is a non-residential use of the common elements. *However, in the case of a non-residential use of the common elements, the land and improvements associated with this non-residential use must be valued separately* so that, after apportionment of this value to the units within the common interest community,

the proper assessment percentage can be applied as described below.

*In the case of such a non-residential use, i.e., commercial use, the assessment rate applied to such common element actual value must be 29 percent.* A commercial use must be an ongoing use as with a restaurant or health club which is open to the general public. Incidental commercial uses, as with occasional community garage sales or craft sales, should not disturb the predominant residential use of the property.

The actual value determined for such non-residential common elements must first be apportioned among the units, then extracted from the total actual (market) value of each unit so as not to be a double assessment, and finally, be separately listed on each NOV and tax bill. The apportionment of this non-residential value is to be made according to the allocated interests of each unit, unless the apportionment of non-residential property value is specifically controlled by the declaration.

The actual (market) value determined for the owner's property will include land, improvements, if any, and the owner's interest [in] the common interest community common elements, including real property actually owned by the association.

3 *Assessor's Reference Library: Land Valuation Manual* 7.17 (Rev.1/95)(ARL) (emphasis added).

Under these guidelines, for example, if a condominium unit with an actual value of $100,000 has a one-fiftieth interest in the condominium association's common elements, the actual value is comprised of several components. These include the land value, the value of the residential improvements of the unit itself, and the unit's proportionate share of the value of the association's common elements.

Thus, for this example, if one of the association's non-residential common elements is a restaurant with an actual value of $500,000, according to ARL procedures, the condominium unit's proportionate share of the value of the restaurant will be $10,000. Because $10,000 of the condominium unit's actual value of $100,000 will be allocated to the restaurant,

the valuation for assessment of this $10,000 then will be computed at the non-residential ratio of 29 percent. *See* § 39–1–104(1), C.R.S.1997. The remaining $90,000 will be allocated to the other components of the condominium unit's actual value with valuation for assessment computed at the lower residential rate applicable to that tax year. *See* §§ 39–1–104(1.5) and 39–1–104.2, C.R.S. 1997.

The procedures contained in the ARL promulgated by the Administrator pursuant to § 39–2–109(1)(e), C.R.S.1997, are binding upon the county assessors. *See Huddleston v. Grand County Board of Equalization,* 913 P.2d 15 (Colo.1996).

Here, the record contains an affidavit by the chief appraiser of the Eagle County assessor's office detailing the manner in which the individual residential units were valued; the fact that the total value of the commercial general common elements was determined to be $1,702,740, and the manner in which such a determination was made; and the fact that "the total commercial value [of $1,702,740] was then allocated to the residential units based on the percent of interest each unit has in the general common elements...." It is therefore uncontroverted that the Assessor followed ARL methodology and made the required allocation in preparing the notices of valuation in issue.

Nevertheless, taxpayer contends the Administrator's procedures violate § 38–33.3–105(2), which prohibits the separate assessment of common elements. It claims that a condominium unit's proportionate share of value of the association's non-residential common elements must be included in the residential improvement component of value, regardless of their non-residential character. And, it further argues that the non-residential common elements must be assessed at the valuation for assessment ratio reserved for residential property. In this regard, taxpayer equates the procedure of separately *valuing* the non-residential common elements with separately *assessing* them. Because we do not consider the two concepts to be equivalent, we reject taxpayer's interpretation. *See Gilpin County Board of Equali-*

zation v. Russell, 941 P.2d 257 (Colo.1997) ("assessment" means the process of placing a value for tax purposes upon the property of a particular taxpayer); *Wenner v. Board of Assessment Appeals*, 866 P.2d 172 (Colo.App. 1993) (same).

When construing a statute, courts should give appropriate deference to the interpretation given it by the officer or agency charged with its administration. Administrative interpretations are most useful to the court when the subject involved calls for the exercise of technical expertise which the agency possesses and when the statutory language is susceptible to more than one reasonable interpretation. Hence, the Administrator's interpretations of the taxation statutes as embodied in the ARL are entitled to judicial deference. *See El Paso County Board of Equalization v. Craddock*, 850 P.2d 702 (Colo.1993); *Mission Viejo Co. v. Douglas County Board of Equalization, supra.*

In interpreting a comprehensive legislative scheme, such as the taxation statutes, courts also must give meaning to all of its parts and construe the statutory provisions to further and to give effect to the legislative intent. To do so, we look first to the statutory language in question. *See Huddleston v. Grand County Board of Equalization, supra.*

Section 38–33.3–105(2) requires that the "valuation of the common elements shall be assessed proportionately to each unit." Each unit must bear its proportionate share of the actual value attributed to the common elements. *See Douglas County Board of Equalization v. Fidelity Castle Pines, Ltd.*, 890 P.2d 119 (Colo.1995) (an essential component of taxation framework established by Colo. Const. art. X, § 3, is determination of property's actual value).

Once the actual value of the non-residential common elements is distributed proportionately among the individual condominium units, the next step is computing the valuation for assessment of this component of each unit's total actual value. In this context, "valuation for assessment" depends upon several factors including the property's classification.

Whether the property is classified as commercial, residential, agricultural, or mining property determines the percentage ratio to be applied to its actual value in computing its assessed value. *See Board of Assessment Appeals v. Colorado Arlberg Club*, 762 P.2d 146 (Colo.1988); Colo. Const. art. X, § 3(1); *see generally Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.*, 797 P.2d 27 (Colo.1990) (describing procedures involved in valuing, assessing, and taxing commercial property).

Although § 38–33.3–105(2) is silent as to the appropriate valuation for assessment ratio to be applied to the various classifications of property to which common elements may belong, § 39–1–104(1), C.R.S.1997, states, with certain exceptions inapplicable here, that the valuation for assessment ratio applicable to all non-residential property is 29 percent. As noted earlier, under § 39–1–104(1.5), the valuation for assessment ratio applicable to residential property for the 1995 tax year was 10.36 percent.

Also, the legislative scheme contemplates situations in which a property or improvement may have differing uses and multiple classifications. In such cases, the value of the property is to be allocated and apportioned among the appropriate classes based upon its uses, and the appropriate valuation for assessment ratio applied as to each such portion. *See* § 39–1–103(9), C.R.S.1997; *see also* § 39–1–102(14.3), C.R.S.1997 ("residential improvement" defined as that portion of a building used predominantly as a residence); § 39–1–102(14.4), C.R.S.1997 ("residential land" does not include that portion of land which is used for purposes which would cause land to be otherwise classified).

Consistent with this overall scheme, it follows that the components of value of a condominium unit's total value, including its various common elements, also should be classified according to the character of the property to which they are ascribed. The legislative scheme further requires that, in the assessment and taxation of the individual units in a common interest community, each unit's proportionate share of value of the non-residential common elements must be separately itemized so that the appropriate

non-residential valuation for assessment ratio may be applied to this component of the unit's total actual value.

Taxpayer's assertion that the Administrator's procedures set forth in the ARL violate § 38–33.3–105(2) is premised on the phrase in that statute stating that "common elements shall not be separately taxed or assessed." But, viewed in context, that phrase is merely a recognition that the value of common elements is inherently included as a component of each individual unit's total actual value and will be assessed and taxed as part of an individual unit's overall assessment and taxation, rather than separately taxed or assessed to the association as was previously done here.

▪ The practical effect of this aspect of the statute is that county assessors are not to schedule common element properties separately in their records nor issue separate notices of valuation or tax bills for them. *See* Uniform Common Interest Ownership Act § 1–105, comment 5, 7 Part II *Uniform Laws Annot.* 25–26 (1997 Master ed.) (source of § 38–33.3–105, C.R.S.1997) ("Importantly, no separate tax bill on the common elements is to be rendered to the association or the unit owners collectively, even though . . . the common elements owned by the association might be subject to taxation as a separately owned parcel of real estate, in the absence of this provision.")

In this manner, the statute ensures that the value of common elements will not be doubly counted and twice assessed and taxed, nor exempted from assessment and taxation. In fact, the ARL admonishes assessors to extract the non-residential common element component of value from a unit's total value so as not to double count it.

Here, defendants complied with this requirement because, according to the undisputed evidence before the trial court, they did not carry the non-residential common elements as separately scheduled properties. Nor did they issue separate notices of valuation or tax bills on the non-residential common elements.

▪ Further, and contrary to taxpayer's contention, we do not consider § 38–33.3–105(2) a manifest expression of legislative intent to exempt non-residential common elements from the non-residential valuation for assessment ratio. *See State v. Estate of Fisch,* 153 Colo. 525, 387 P.2d 282 (1963) (exemptions will not be granted unless the statute is clear and unambiguous).

In summary, we reject taxpayer's interpretation of § 38–33.3–105(2) and conclude that the Administrator's interpretation of the statute, as embodied in the ARL procedures applied by defendants here, is more consistent with the overall legislative scheme.

▪ Nor do we perceive any violation of the uniformity requirement of Colo. Const. art. X, § 3(1)(a) in the Administrator's interpretation of the statutory scheme. It is only taxpayer's interpretation that leads to the impermissible result of unequal treatment of property within the same class, not the interpretation adopted by the Administrator. *See District 50 Metropolitan Recreation District v. Burnside,* 167 Colo. 425, 448 P.2d 788 (1968) (uniformity clause of state constitution requires that all property logically belonging in a given classification shall receive treatment equal to that accorded all other property in the same class).

## III.

Taxpayer next contends that defendants unlawfully changed the classification of the non-residential common elements in violation of § 39–1–103(5)(c), C.R.S.1997. However, because the change in the classification and treatment of these common elements by defendants was not erroneous, we perceive no such violation.

## IV.

Taxpayer next asserts the trial court erred in failing to find that defendants breached the terms of the 1991 stipulation. Again, we disagree.

The stipulation required taxpayer to convert several improvements, including the non-residential improvements at issue here, into common elements of the condominium project. It further provided that:

Upon the conversion of said properties into general common elements, Defendants further agree that the value of these general common elements ... will be inherently included in the market prices of the individual condominium units and will not be separately taxed by the Defendants subsequent to January 1, 1992....

As it argued with respect to § 38–33.3–105(2), taxpayer maintains that defendants breached the stipulation because they taxed the non-residential common elements separately. However, because we have concluded defendants did not tax the non-residential common elements separately, we necessarily reject this related contention.

Given this conclusion, we also need not consider the defendants' argument that enforcement of the stipulation would contravene the uniformity clause of the state constitution and violate public policy by requiring them to ignore non-residential common elements and to apply a residential valuation for assessment ratio to this component of each individual unit's total actual value. *See* § 38–33.3–104, C.R.S.1997 (provisions of applicable statutory scheme may not be varied by agreement); *Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co.*, 698 P.2d 1340 (Colo.1985) (same legal rules apply to a stipulation as to any other agreement between private parties, and it may be invalidated if there is any sound reason in law or equity to do so); *Gold Rush Investments, Inc. v. G.E. Johnson Construction Co.*, 807 P.2d 1169 (Colo.App.1990) (stipulation may not abrogate inviolate rules of public policy).

## V.

■ Lastly, taxpayer contends that defendants' actions impose a greater burden upon it than upon other taxpayers. According to taxpayer, defendants applied the ARL's procedures regarding non-residential common elements to only one other condominium association in Eagle County. We disagree.

The evidence established that the other association was the only other one in Eagle County also owning non-residential common elements. Because taxpayer did not meet its

burden of showing that other associations owned non-residential common elements and that a different methodology was used in their assessments, we conclude the trial court did not err in granting summary judgment to defendants on this issue. *See Durnford v. City of Thornton*, 29 Colo.App. 349, 483 P.2d 977 (1971).

Judgment affirmed.

MARQUEZ and KAPELKE, JJ., concur.