XEROX CORPORATION,
Plaintiff–Appellant,

v.

BOARD OF COUNTY COMMISSIONERS of ARAPAHOE COUNTY, acting as the Arapahoe County Board of Equalization; Edward G. Bosier, in his official capacity as the Arapahoe County Assessor; Board of County Commissioners of El Paso County, acting as the El Paso County Board of Equalization; John M. Bass, in his official capacity as the El Paso County Assessor; Board of County Commissioners of Boulder County, acting as the Boulder County Board of Equalization; and Cindy Domenico, in her official capacity as the Boulder County Assessor, Defendants–Appellees,

and

Mary E. Huddleston, Property Tax Administrator, Intervenor–Appellee.

No. 02CA2026.

Colorado Court of Appeals,
Div. III.

Oct. 9, 2003.

Certiorari Denied April 12, 2004.

Downey & Knickrehm, P.C., Norman H. Wright, Denver, Colorado, for Plaintiff–Appellant.

Kathryn Schroeder, County Attorney, George D. Rosenberg, Assistant County Attorney, Littleton, Colorado, for Defendants–Appellees Board of County Commissioners of Arapahoe County, and Edward G. Bosier.

Michael A. Lucas, County Attorney, John N. Franklin, Assistant County Attorney, Colorado Springs, Colorado, for Defendants–Appellees Board of County Commissioners of El Paso County, and John M. Bass.

H. Lawrence Hoyt, County Attorney, Robert R. Gunning, Assistant County Attorney, Boulder, Colorado, for Defendants–Appellees Board of County Commissioners of Boulder County, and Cindy Domenico.

Ken Salazar, Attorney General, Larry A. Williams, First Assistant Attorney General, Denver, Colorado, for Intervenor–Appellee.

Opinion by Justice KIRSHBAUM.*

Plaintiff, Xerox Corporation, appeals the summary judgment entered in favor of defendants, the Boards of Equalization and the County Assessors of Arapahoe, Boulder, and El Paso Counties, and intervenor, the Property Tax Administrator (the Administrator). We affirm.

I.

Plaintiff manufactures, leases, and sells various types of equipment, including copiers, printers, and reproduction devices and accessories. Because it owns the equipment it directly leases to consumers, under §§ 39–5–107 & 39–5–108, C.R.S.2002, plaintiff must annually file personal property declaration schedules in all counties wherein it has taxable property.

In 1999, plaintiff filed such schedules with the defendants. Plaintiff subsequently amended the schedules to reflect the costs incurred in manufacturing the equipment as the basis for reducing the assessed value of the equipment.

The assessors elected not to adopt plaintiff's proposed methodology. Indeed, they determined that the actual value of the equipment should be evaluated using comparable sales prices for like equipment, depreciated for age. The comparable sales price determinations were based on a memorandum issued by the Administrator to each of the assessors. The memo stated that the Colorado Division of Property Taxation (DPT) "[did] not support [plaintiff's] actions to report 'manufacturer's cost' in lieu of comparable sales prices."

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2002.

Pursuant to § 39–5–122(2), C.R.S.2002, plaintiff objected to the assessors' methodology, and after the assessors denied plaintiff's requested relief, plaintiff appealed to the appropriate boards of equalization (BOEs), pursuant to § 39–8–106(1), C.R.S.2002. After conducting hearings, the BOEs issued resolutions denying plaintiff's appeals.

Thereafter, plaintiff petitioned for a consolidated judicial review of the BOE decisions. The Administrator intervened in the district court action.

Concluding that the parties differed in their interpretations of § 39–1–103(13), the district court granted summary judgment in favor of defendants. The court determined that the DPT's interpretation did not conflict with the statute and thus was entitled to deference.

## II.

On appeal, plaintiff contends that the district court erred in granting summary judgment in favor of defendants because § 39–1–103(13) mandates that assessors use manufacturing costs rather than comparable sale prices to determine actual value of personal property for tax purposes. We disagree.

The district court's entry of summary judgment required the interpretation of tax statutes and regulations. To that extent, our review is de novo. *Stell v. Colo. Dep't of Health Care Policy & Fin.*, 78 P.3d 1142 (Colo.App.2003).

The basic framework for fair and uniform ad valorem taxation of real and personal property is set forth in the Colorado Constitution, article X, section 3, and is dependent upon a calculation of the "actual value" of the property to be taxed. Such calculation must be determined under "general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of all real and personal property." Colo. Const. art. X, § 3(1)(a); *see Gilpin County Bd. of Equalization v. Russell*, 941 P.2d 257, 260–61 (Colo.1997).

■ Actual value is synonymous with market value, *see City & County of Denver v. Bd. of Assessment Appeals*, 848 P.2d 355, 360 (Colo.1993), and is to be determined by one of three approaches: the cost approach, the market approach, or the income approach. *Bd. of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.*, 797 P.2d 27 (Colo.1990).

■ The Administrator is authorized to prepare and publish materials concerning methods of appraisal and to require their utilization by assessors in valuing and assessing taxable property. *See* § 39–2–109(1)(e), C.R.S.2002. These manuals are binding upon the assessors. *See Huddleston v. Grand County Bd. of Equalization*, 913 P.2d 15 (Colo.1996); *Padre Resort, Inc. v. Jefferson County Bd. of Equalization*, 30 P.3d 813 (Colo.App.2001).

## III.

Section 39–1–103(13) provides, in part:

(a) [I]n the consideration of the cost approach, market approach, and income approach to the appraisal of personal property by assessing officers, the cost approach shall establish the maximum value of property if all costs incurred in the acquisition and installation of such property are fully and completely disclosed by the property owner to the assessing officer.

(b) Therefore, in the assessment of taxable personal property, the assessing officer shall consider the value derived from the cost approach to be the maximum value of the property if the property owner has timely filed his declaration and the declaration contains all relevant information pertaining to the valuation of the property and, also includes, a full disclosure of all costs incurred in the acquisition and installation of all personal property owned by or in the possession of the taxpayer.

The parties disagree with respect to the meaning of the phrase "costs incurred in the acquisition and installation" of the property. Plaintiff contends that its cost of manufacturing property must form the basis for assessing the real value of the equipment under the statute. Defendants argue that the trial court properly gave deference to the DPT's statutory interpretation utilizing comparable sales prices as the starting point for applica-

tion of the cost approach method here. We agree with defendants.

■ In interpreting a comprehensive legislative scheme such as the taxation statutes, courts must first examine the statutory language in an effort to give full effect to the legislative intent. *Huddleston v. Grand County Bd. of Equalization, supra; Manor Vail Condo. Ass'n v. Bd. of Equalization,* 956 P.2d 654 (Colo.App.1998).

■ Where statutory language is clear and unambiguous, there is no need to resort to interpretive rules of statutory construction. *Huddleston v. Grand County Bd. of Equalization, supra.* However, judicial deference to administrative interpretation of a statute is appropriate when the legislative language is subject to different reasonable interpretations and the issue falls within an administrative agency's special expertise. *See Huddleston v. Grand County Bd. of Equalization, supra,* 913 P.2d at 17; *Manor Vail Condo. Ass'n v. Bd. of Equalization, supra,* 956 P.2d at 659; *see also Colo. State Pers. Bd. v. Dep't of Corr.,* 988 P.2d 1147, 1150 (Colo.1999). If a statute is silent or ambiguous with respect to a specific issue, courts must consider whether the agency's regulation is based on a permissible construction of the statute. *Smith v. Farmers Ins. Exch.,* 9 P.3d 335, 340 (Colo.2000).

### A.

■ Here, the phrase "all costs incurred in the acquisition and installation" in § 39–1–103(13) is susceptible to more than one reasonable interpretation. *See Manor Vail Condo. Ass'n v. Bd. of Equalization, supra,* 956 P.2d at 659.

On its face, the statute is unclear as to what the word "acquisition" encompasses, and the statute does not elsewhere define the term. *Webster's Third New International Dictionary* 18–19 (1986) defines "acquisition" as "the act or action of acquiring," and "acquire" is defined as "to get as one's own; to come into possession or control or power of disposal of often by some uncertain or unspecified means." Similarly, *Black's Law Dictionary* 24 (7th ed.1999) defines "acquisition" as "the gaining of possession or control over something." Gaining possession or control of, for example, a copier could be accomplished either by purchasing it or by manufacturing it; thus, the statutory language is susceptible to more than one interpretation.

### B.

The Administrator, through the *Assessor's Reference Library (ARL )* manuals, has construed § 39–1–103(13) to authorize the use of comparable sales prices to serve as the basis for the cost approach method. According to the *ARL,* such cost approach method is based upon the principle that the value of a property equals the cost of acquiring an equally desirable substitute property. It is essentially an estimate of the cost of replacing the subject property with a new property that is equivalent in function and utility. *See* 5 Division of Property Taxation, Colorado Department of Local Affairs, *Assessor's Reference Library: Personal Property Valuation Manual* § 3.4 (1989, rev.vol.2002); *see also Bd. of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., supra,* 797 P.2d at 30 n. 9 ("The cost approach involves estimating the cost of replacing the improvements to the property, less accrued depreciation.").

Cost approach estimates of value are based upon a replacement cost new (RCN) value, which is the cost to replace the item being appraised with another item equivalent in function and utility. The RCN does not contemplate an exact replica of the item being appraised, but rather a replacement that will yield the same use. *See* 5 *ALR, supra,* § 3.5.

In determining the RCN value, the *ARL* provides that the original installed costs should be declared on the declaration schedule. The *ARL* defines original installed cost as "the amount that was paid for the personal property when it was new," and includes "the purchase price of the item, freight to the point of use, applicable sales/use tax and any installation charges necessary to ready the property for use in the business location." Moreover, as defendants note, original installed costs are distinguished in the *ARL* from manufacturer's costs, which are defined separately as the "costs incurred by the man-

ufacturer of the property to manufacture the item at the plant." *See* 5 *ARL, supra,* § 3.5.

These various *ARL* provisions bolster the conclusion that the comparable sales price, rather than the manufacturer's cost, is the appropriate starting point for the cost approach under § 39–1–103(13).

## C.

Additionally, we determine that the DPT's interpretation is reasonable because the equipment at issue here is not unique property. The *ARL* provides:

> [I]n cases where the taxpayer has built a piece of personal property for which no comparables exist in the market and, therefore, for which no value in exchange can be determined, the taxpayer must estimate the cost of materials and labor used to build the personal property. In addition, estimates for freight to the point of use, installation charges, and sales/use tax must be added. *This estimation procedure is to be used only when no comparable personal property exists in the market.*

5 *ARL, supra,* § 3.11 (emphasis in original).

Here, a declaration of manufacturer's costs might have been appropriate had this equipment constituted unique personal property. However, the parties stipulated that the equipment at issue was not unique personal property.

## D.

Furthermore, the DPT's interpretation comports with Colorado constitutional provisions requiring property to be assessed at its "actual value" and promoting the principle of "equalized value." *See* Colo. Const. art. X, § 3; *Gilpin County Bd. of Equalization v. Russell, supra,* 941 P.2d at 260–61.

▮ As noted earlier, actual value is synonymous with market value. *See City & County of Denver v. Bd. of Assessment Appeals, supra,* 848 P.2d at 360. Market value represents "what a willing buyer would pay a willing seller under normal economic conditions." *Bd. of Assessment Appeals v. Colo. Arlberg Club,* 762 P.2d 146, 151 (Colo.1988)(quoting *May Stores Shopping Ctrs., Inc. v. Shoemaker,* 151 Colo. 100, 110, 376 P.2d 679, 683 (1962)); *see also Padre Resort, Inc. v. Jefferson County Bd. of Equalization, supra,* 30 P.3d at 815.

Here, the record reflects a significant difference between plaintiff's manufacturer's costs and its retail selling prices. The application of the manufacturer's cost under § 39–1–103(13) would result in values well below market value.

Moreover, as noted in the DPT memorandum, comparable sales prices establish "an equalized value upon which to apply depreciation for reported copiers." Comparable sales prices, rather than manufacturer's costs, better "secure just and equalized valuations for assessments." *See* Colo. Const. art. X, § 3(1)(a); *Gilpin County Bd. of Equalization v. Russell, supra,* 941 P.2d at 261.

## IV.

Defendants' construction of the statute requiring comparable sales prices is consistent with the DPT's interpretation of the statute. As the DPT's interpretation is permissible and reasonable, we defer to it and hold that comparable sales prices are the appropriate basis to assess personal property under § 39–1–103(13). *See Huddleston v. Grand County Bd. of Equalization, supra,* 913 P.2d at 17; *Manor Vail Condo. Ass'n v. Bd. of Equalization, supra,* 956 P.2d at 659.

Accordingly, the trial court's judgment is affirmed.

Judge MARQUEZ and Judge HUME *, concur.