**JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS,**
Petitioner–Appellant,

v.

**S.T. SPANO GREENHOUSES, INC.,**
Respondent–Appellee,

and

**Board of Assessment Appeals, Appellee.**

No. 05CA0300.

Colorado Court of Appeals,
Div. III.

June 1, 2006.

Rehearing Denied Aug. 10, 2006.

Frank J. Hutfless, County Attorney, Martin E. McKinney, Assistant County Attorney, Lily W. Oeffler, Assistant County Attorney, Writer Mott, Assistant County Attorney, Golden, Colorado, for Petitioner–Appellant.

William A. McLain, P.C., William A. McLain, Denver, Colorado, for Respondent–Appellee.

John W. Suthers, Attorney General, Denver, Colorado, for Appellee.

TAUBMAN, J.

In this case concerning the valuation of greenhouse property for tax purposes, petitioner, Jefferson County Board of County Commissioners (Board), appeals the order of the Board of Assessment Appeals (BAA) in favor of respondent, S.T. Spano Greenhouses, Inc. (Spano). We reverse and remand for a new hearing.

Spano owns approximately 3.97 acres of commercial property in Arvada, Colorado, consisting of greenhouses and support buildings. The Jefferson County Assessor valued the property for tax purposes at $348,510 in 1998 and $308,990 in 1999 and 2000.

Spano objected to these values and filed abatement petitions with Jefferson County. It sought to have the value of the property reduced to $37,880 for tax year 1998 and $78,919 for tax years 1999 and 2000. Jefferson County denied both petitions, and Spano appealed the denials to the BAA, which held a hearing in November 2004.

At the hearing, Spano valued its land based on twelve rural land sales that were selected based on agricultural use before and after sale. The sales ranged in size from 35.13 acres to 307 acres, and in price from $1,295 to $2,640 per acre. The Board valued Spano's land based on six land sales ranging in size from 2.575 acres to 41.864 acres, and in price from $23,533 to $87,100 per acre. Several of the Board's comparable land sales were properties that either contained a greenhouse or were purchased to build a greenhouse.

The BAA ruled in favor of Spano, concluding that the comparable sales used to value raw land under the cost approach for assessing the value of "other agricultural property"

must have been of land used agriculturally before and after sale. The BAA reduced the assessed value of the property to $175,704 for tax year 1998 and to $177,833 for tax years 1999 and 2000. In January 2005, the Board filed a motion to reconsider, which the BAA denied. This appeal followed.

## I. Valuing "Other Agricultural Property"

■ The Board contends that the BAA erred by valuing the land component of Spano's property under the cost approach based on comparable sales of agricultural land that was in agricultural use before and after the sale. The Board argues that the BAA should have valued the land based on comparable sales of "other agricultural property" (sometimes referred to as agribusiness property). We agree.

■ Determinations of the BAA are subject to judicial review under the Administrative Procedure Act. Section 24–4–101, et seq., C.R.S.2005; *Transponder Corp. v. Property Tax Adm'r*, 681 P.2d 499 (Colo. 1984). It is the function of the BAA, not the reviewing court, to weigh the evidence and resolve any conflicts; however, a decision of the BAA may be set aside if it is unsupported by competent evidence or reflects a failure to abide by the statutory scheme for calculating property tax assessments. *Bd. of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.*, 797 P.2d 27 (Colo.1990).

■ While the BAA's findings are entitled to deference, its interpretation of a property tax statute is a question of law that an appellate court reviews de novo. *League of Women Voters v. Davidson*, 23 P.3d 1266 (Colo.App.2001). Any such interpretation must give substantial deference to the General Assembly's valuation and assessment methods and procedures. *Wash. County Bd. of Equalization v. Petron Dev. Co.*, 109 P.3d 146 (Colo.2005).

■ A tax statute is no different from any other statute and must be construed as a whole to give consistent, harmonious, and sensible effect to all its parts. In construing a statute, we should avoid interpretations

that render other statutory provisions superfluous. *Welby Gardens v. Adams County Bd. of Equalization,* 71 P.3d 992 (Colo.2003).

Judicial deference to an administrative agency's interpretation of a statute is appropriate if the statute before the court is subject to different reasonable interpretations and the issue comes within the administrative agency's expertise. *Huddleston v. Grand County Bd. of Equalization,* 913 P.2d 15 (Colo.1996). If a property tax statute does not provide specific guidance on a particular issue, a reviewing court will consider the Property Tax Administrator's interpretation of the appropriate provision. *Golden Gate Dev. Co. v. Gilpin County Bd. of Equalization,* 856 P.2d 72 (Colo.App.1993).

The Property Tax Administrator's interpretations of property tax statutes are embodied in the *Assessor's Reference Library (ARL )* manuals. *Manor Vail Condo. Ass'n v. Bd. of Equalization,* 956 P.2d 654 (Colo.App.1998). The provisions of an administrative regulation should be read in connection with one another, so that the provisions may be interpreted as a whole. *Williams v. Colo. Dep't of Corr.,* 926 P.2d 110 (Colo.App.1996).

Section 39–1–102(1.6)(a), C.R.S.2005, defines "agricultural land" for property tax purposes. *Hepp v. Boulder County Assessor,* 113 P.3d 1268 (Colo.App.2005). Section 39–1–102(1.6)(b), C.R.S.2005, in turn, defines "other agricultural property" for property tax purposes and states in relevant part:

> All other agricultural property that does not meet the definition set forth in paragraph (a) of this subsection (1.6) shall be classified as all other property and shall be valued using appropriate consideration of the three approaches to appraisal based on its actual use on the assessment date.

Greenhouses that grow products which do not originate from the land's productivity do not qualify as agricultural land for property tax purposes. Thus, they must be taxed as other agricultural property under § 39–1–102(1.6)(b). *Welby Gardens v. Adams County Board of Equalization, supra.* Under *ARL: Administration Manual* 6.32 (rev.Sept.1999), other agricultural properties include apiaries, aquaculture, dairies, feed lots, fur-bearing animal farms, greenhouses, hog farms, horse boarding stables, mushroom farms, and poultry farms.

Here, the parties agree that the property in question does not qualify as agricultural land for property tax purposes. Therefore, we must interpret § 39–1–102(1.6)(b) to determine the appropriate valuation method for Spano's property. Thus, our standard of review is de novo.

The three approaches to appraisal, used to determine actual market value, are the market approach, the income approach, and the cost approach. *Xerox Corp. v. Bd. of County Commr's,* 87 P.3d 189 (Colo.App. 2003).

The market approach, or comparable sales method, analyzes the sales of comparable properties in the market. The income approach generally involves a calculation of the income stream the property is capable of generating, capitalized to value at a rate typical within the relevant market. *Bd. of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., supra.* The cost approach involves adding the estimated value of the land to the current cost of constructing a reproduction or replacement for the improvements and then subtracting the amount of depreciation. *ASARCO, Inc. v. Bd. of County Commr's,* 916 P.2d 550 (Colo.App.1995).

Section 39–1–102(1.6)(b) defines "other agricultural property" generally and does not provide specific guidance on how it should be valued. Therefore, we defer to the administrative interpretations of this statute contained in three *ARL* provisions:

(1) Sales of comparable land in the "all other agricultural property" subclass must be of "similar tracts of land which were purchased for similar purposes; *the comparable sales should be as similar to the subject as possible in size, location, and present use."* *ARL: Land Valuation Manual* 5.26 (rev. Jan.2006) (emphasis added).

(2) "Land in this subclass is valued based on its actual use (its agricultural market value) not on its productivity." *ARL: Administration Manual* 6.32 (rev.Sept.1999).

We apply this version of page 6.32, even though it has been amended, because the parties agree that it is the applicable provision.

(3) "As required by § 39–1–102(1.6)(b), the actual value of [other agricultural property] is to be based on the three approaches to value, including market value established using sales of comparable agricultural lands ...." *ARL: Land Valuation Manual* 2.17 (rev.Dec.2003).

The Board argues that the BAA erred because it relied on page 6.32 of the *ARL* manual rather than page 5.26 when it valued Spano's property. We agree in part and conclude that all three *ARL* provisions must be construed together.

As mentioned above, the provisions of an administrative regulation should be read in connection with each other, so that the provisions may be interpreted as a whole. Taken together, these three *ARL* provisions mean that the land component of other agricultural property must be valued based on comparable sales of other agricultural land that are as similar as possible to the subject in size, location, and present use.

The *ARL* land valuation manual expressly states on page 5.26 that the comparable sales used for valuing other agricultural land should be as similar as possible to the subject property in size, location, and present use. Thus, the BAA erred when it valued the land component of Spano's property under the cost approach based on sales of agricultural land that was not comparable in size and location and was in agricultural use, rather than other agricultural use, before and after the sale.

Instead, the BAA improperly relied on the testimony of Spano's expert witness in interpreting page 6.32 of the *ARL* manual. That section simply provides that other agricultural property must be valued based on its actual use, that is, its agricultural market value, rather than on its productivity, which is the basis for valuing agricultural land. *See Welby Gardens v. Adams County Bd. of Equalization, supra.* However, agricultural market value, as that term is used on page 6.32, must mean the value of other agricultural property, rather than agricultural land.

To hold otherwise would vitiate the statutory distinction between these two property subclasses. If other agricultural property were to be valued as agricultural land, the General Assembly would have had no reason to create the separate category of other agricultural property. *See USF Distrib. Servs., Inc. v. Indus. Claim Appeals Office*, 111 P.3d 529 (Colo.App.2004) (interpretation rendering a particular clause meaningless and without effect is to be avoided).

Similarly, we disagree with Spano's argument that the former version of page 2.17 of the *ARL* manual requires the land component of its property to be valued according to sales· of comparable agricultural land instead of agribusiness or other agricultural property. As mentioned above, that version of page 2.17 stated that the market value of other agricultural lands must be established using sales of "comparable agricultural lands." If the former version of page 2.17 were to be interpreted as requiring other agricultural property to be valued according to sales of comparable agricultural lands, the statutory distinction between agricultural land and other agricultural property would be rendered meaningless. This is particularly true in light of the clause appearing at the beginning of that provision, which states that the valuation must be "[a]s required by § 39–1–102(1.6)(b)," which in turn provides that the valuation must be based on "actual use" of the property.

Therefore, contrary to Spano's contention, the former version of page 2.17 of the *ARL* manual does not require that the land component of its property must be valued according to comparable sales of agricultural land, as opposed to "other agricultural property."

Accordingly, we conclude that pages 2.17, 5.26, and 6.32 must be read together to determine the proper method for valuing other agricultural property. Taken together, these provisions require the land component of other agricultural property to be valued based on comparable sales of other agricultural land that is as similar as possible to the subject land in size, location, and present use.

Because the BAA employed an incorrect legal standard, we set aside its decision.

## II. Application of *ARL* Provisions

 The subject property here is an approximately 3.97 acre parcel located in the heart of Arvada, Colorado. The Board presented six comparable land sales ranging in size from 2.575 acres to 41.864 acres, several of which contained greenhouses or were purchased for the purpose of constructing a greenhouse.

However, the Board categorized these land sales as "commercial" instead of "other agricultural" or "agribusiness" in its appraisal value allocations. Moreover, the Board never stated that it sought to follow the criteria in *ARL* manual page 5.26 when it chose its comparable land sales. Furthermore, although nothing in the *ARL* manual prohibits the Board from using vacant lots as comparable sales in the valuation of other agricultural property, the Board did not explain whether use of such comparables, rather than sales of lots containing greenhouses or other similar improvements, would affect the value of the land.

Spano presented twelve sales of rural land that ranged in size from 35.13 acres to 307 acres and was used agriculturally before and after the sale. Spano's comparable sales were of land that did not contain greenhouses and was not purchased for the purpose of constructing a greenhouse. In our view, Spano's land sales were not sufficiently comparable to the subject property in actual use to be considered by the BAA in valuing the subject property. *See* § 39–1–102(1.6)(b); *ARL: Land Valuation Manual* 5.26.

Thus, the BAA applied the wrong legal standard because it did not consider comparable sales "as similar to the subject as possible in size, location and present use," as required by page 5.26 of the *ARL* manual, and based its valuation on sales that were not sufficiently comparable.

However, the remedy here is not to reimpose the Board's assessment values because the Board also did not use the correct legal standard. Thus, remand for a new hearing is necessary so that the BAA may apply page 5.26 of the *ARL* manual, together with pages 2.17 and 6.32, to determine which comparable sales of other agricultural property are most similar to the subject in size, location, and present use and to weigh the probative value of that evidence. *See Bd. of Assessment Appeals v. Sampson,* 105 P.3d 198 (Colo.2005)(remand for further proceedings).

Because we are sufficiently guided by the former version of page 2.17 of the *ARL* manual, we need not address whether the current version of this provision is retroactive.

The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge GRAHAM and Judge FURMAN concur.