25CA0404 Shaffstall v Adams County 03-26-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0404
Board of Assessment Appeals No. 23BAA5371

---

Gary Shaffstall,

Petitioner-Appellant,

v.

Adams County Board of Equalization,

Respondent-Appellee,

and

Board of Assessment Appeals,

Appellee.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

---

Gary Shaffstall, Pro Se

Heidi Miller, County Attorney, Meredith P. Van Horn, Assistant County
Attorney, Brighton, Colorado, for Respondent-Appellee

Philip J. Weiser, Attorney General, Krista Maher, First Assistant Attorney
General, Denver, Colorado, for Appellee

¶ 1    Petitioner, Gary Shaffstall (Shaffstall), appeals the final agency order issued by the Board of Assessment Appeals (BAA) determining the actual value of his property for the 2023 tax year.  We affirm.

## I.    Background

¶ 2    Shaffstall owns a manufactured home that is considered real property (the property).  In 2023, the county assessor assigned a value of $254,000 to the property.  Shaffstall appealed the initial value to the County Board of Equalization (CBOE), which adjusted the value to $200,000.

¶ 3    Unsatisfied with the CBOE's adjustment, Shaffstall appealed the revised valuation to the BAA.  There, he argued that the property value should be assessed based on the cost, as opposed to the market, approach, so the actual value of the property should be $80,000.  The BAA issued its final agency order rejecting Shaffstall's request to apply the cost approach and valued the property at $187,500.  Shaffstall now appeals.

## II.    Standard of Review and Applicable Law

¶ 4    Decisions made by the BAA are subject to judicial review under the State Administrative Procedure Act, section 24-4-106(11), C.R.S. 2025.  § 39-8-108(2), C.R.S. 2025; *Jefferson Cnty. Bd. of*

*Cnty. Comm'rs v. S.T. Spano Greenhouses, Inc.*, 155 P.3d 422, 424 (Colo. App. 2006). It is the BAA's role "to weigh the evidence and resolve any conflicts," but a reviewing court may set aside the BAA's decision "if it is unsupported by competent evidence or reflects a failure to abide by the statutory scheme for calculating property tax assessments." *S.T. Spano Greenhouses, Inc.*, 155 P.3d at 424. And the BAA's interpretation of statutes is a question of law that we review de novo. *Id.*

¶ 5     Manufactured or mobile homes are designed for residential occupancy, *see* § 24-32-3302(20)(b), (24), C.R.S. 2025, but are generally taxed as personal property, *see Leader Fed. Bank for Sav. v. Saunders*, 929 P.2d 1343, 1353 (Colo. 1997) (analyzing taxation of manufactured homes as personal property and real property). If a manufactured home is permanently affixed to the ground, however, it is considered "purged," meaning the mobile home title converts to real property and it is taxed accordingly. § 38-29-118(2), C.R.S. 2025; *Saunders*, 929 P.2d at 1353 (holding that owners of purged manufactured homes are required to pay residential property taxes).

¶ 6     In Colorado, property appraisals must be based on either the market approach, the cost approach, or the income approach. Colo. Const. art. X, § 3(1)(a).  But assessors are required to use the market approach to determine the "actual value" of real property. Colo. Const. art. X, § 20(8)(c).  Under the market approach, actual value is equal to market value.  *Xerox Corp. v. Board of Cnty. Comm'rs*, 87 P.3d 189, 193 (Colo. App. 2003) ("[A]ctual value is synonymous with market value.").  And market value is "what a willing buyer would pay a willing seller under normal economic conditions."  *Id.* (quoting *Bd. of Assessment Appeals v. Colo. Arlberg Club*, 762 P.2d 146, 151 (Colo. 1988)).  Accordingly, the market approach involves "analyz[ing] the sales of comparable properties in the market."[1]  *S.T. Spano Greenhouses, Inc.*, 155 P.3d at 425.

---

[1] "The cost approach involves adding the estimated value of the land to the current cost of constructing a reproduction or replacement for the improvements and then subtracting the amount of depreciation."  *Jefferson Cnty. Bd. of Cnty. Comm'rs v. S.T. Spano Greenhouses, Inc.*, 155 P.3d 422, 425 (Colo. App. 2006).  The income approach involves "a calculation of the income stream the property is capable of generating, capitalized to value at a rate typical within the relevant market."  *Id.*

## III. Analysis

¶ 7     Shaffstall argues that the BAA erred in its property valuation because it incorrectly interpreted Colorado law and did not use the cost approach.  We are not persuaded.

¶ 8     The BAA did not err by rejecting Shaffstall's request to use section 39-1-103(13)(c), C.R.S. 2025.  We acknowledge that section 39-1-103(13)(c) states that assessors should use the cost approach for appraisals.  But that subsection relates solely to personal property, not real property.  *See* § 39-1-103(13)(a)-(c) (referring to the "appraisal of personal property" and the "assessment of taxable personal property"); *see also Xerox Corp.*, 87 P.3d at 193 (analyzing "the appropriate basis to assess personal property under § 39-1-103(13)").  Because Shaffstall purged his manufactured home in 1999, the property converted to real property and, therefore, needed to be taxed as such.  *See* § 38-29-118(2).

¶ 9     Shaffstall asserts a theory as to why his property value has increased so significantly.  Though it is not completely clear, he appears to allege that investors fraudulently bought homes in the area and then sold them at much higher prices, leading to inflated home values.  But even assuming there was fraud or collusion with

4

companies or individuals purchasing mobile homes in his area, Colorado law requires the BAA to determine the property's actual value by using the market approach because it is considered real property. *See* § 39-1-103(5)(a). And Shaffstall does not dispute that his mobile home was purged in 1999.

¶ 10 We also conclude that the BAA's valuation of the property is supported by the record. The county presented as evidence an assessor's appraisal report that included three comparable sales of purged manufactured homes. Based on the comparable sales, the assessor came up with a value range between $187,578 and $255,176. The assessor indicated that the property was most similar to the comparable at the lowest end of the range and recommended the property be valued at $187,500. Shaffstall did not provide comparable sales contesting the assessor's valuation, such as comparables of similarly situated mobile homes that had

not been remodeled or upgraded, supporting his valuation of $80,000.[2]  Accordingly, we will not disturb the BAA's order.

## IV.   Conclusion

¶ 11     The BAA's order is affirmed.

JUDGE PAWAR and JUDGE GOMEZ concur.

---

[2] We acknowledge that Shaffstall provided a quote for the purchase of a 2024 manufactured home, but it does not comply with the statutory requirements for valuation under the market approach. Generally, under the market approach, comparable sales are gathered from a "base period" that is eighteen months "prior to July 1 immediately preceding the assessment date."  § 39-1-104(10.2)(d), C.R.S. 2025.  And the assessment date is January 1.  § 39-1-105, C.R.S. 2025.  Accordingly, for the tax year 2023, the base period is January 1, 2021 through June 30, 2022.